UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS THOMPSON on behalf of himself, others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION and DOES 1 through 100,<br><br>Defendants. | Case No.: 14-cv-2778-CAB-WVG<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Doc. No. 59] |

This matter is before the Court on the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. No opposition or objection to the motion was filed. For the reasons set forth below, the motion is **DENIED**.

**I.     Background**

Defendant Costco Wholesale Corporation ("Costco"), employs truck drivers who operate trucks within San Diego County and elsewhere in California. Plaintiff Douglas Thompson is a former truck driver for Defendant.  This lawsuit arises out of Costco's alleged failure to properly provide meal and rest periods and to properly compensate its truck drivers.

On October 17, 2014, Thompson filed a class action complaint in the San Diego County Superior Court asserting eleven claims under California's labor and unfair competition laws. Costco removed the lawsuit to this Court on November 20, 2014, and then filed a motion to dismiss. Instead of opposing the motion, Thompson filed the first amended complaint ("FAC") on January 12, 2015. The FAC narrowed the issues, eliminated several claims, and ultimately alleged seven claims under California's labor and unfair competition laws. [Doc. No. 14.] On February 10, 2015, Thompson filed a Second Amended Complaint ("SAC") that further narrowed the focus of the complaint, including limiting the class to California truck drivers. [Doc. No. 19.] The SAC asserted seven claims under California law: (1) Wage Theft/Time-Shaving; (2) Failure to pay overtime; (3) Failure to provide meal periods; (4) Failure to provide rest periods; (5) Failure to pay compensation for all time worked; (6) Waiting time penalties; and (7) Violation of California's unfair competition law, California Business and Professions Code Section 17200, *et seq*.

After conducting some discovery, the parties participated in a private mediation on March 11, 2016. The mediation concluded with a mediator's proposal, and after additional discussions, the proposal was revised and resulted in a Memorandum of Understanding ("MOU"). The MOU led to a settlement agreement dated June 27, 2016 (the "Settlement Agreement"). [Doc. No. 59-2.] In addition to the terms listed below, the Settlement Agreement required Plaintiff to file a Third Amended Complaint ("TAC") adding claims for unpaid wages and liquidated damages under the Fair Labor Standards Act ("FLSA"), a claim for penalties under California Labor Code section 226, and a claim under the Private Attorney General Act of 2004 ("PAGA").

On September 27, 2016, Plaintiff's counsel filed a joint motion seeking leave to file a third amended complaint ("TAC"). [Doc. No. 55.] The Court granted the motion, and Plaintiff filed the TAC on October 3, 2016. [Doc. No. 57.] The TAC added an FLSA minimum wage claim, a PAGA claim, and a wage statement penalty claim.

**II.     Settlement Agreement Terms**

On December 2, 2016,[1] Plaintiff filed the instant motion for preliminary approval of the class action settlement. The motion contained a proposed notice to potential class members. The class is defined as follows:

> [A]ll current and former fleet drivers employed at a Costco business center or depot in California from October 17, 2010 through October 4, 2016 (the date 85 days after Plaintiff signed the Agreement).

[Doc. No. 59 at 4-5]

The Settlement Agreement requires Costco to pay a gross settlement amount of $2,000,000, allocated as follows: $1,308,000 to the settlement members for their claims; $5,000 as an incentive award for Thompson; $660,000 to Plaintiff's counsel; $10,000 to settlement of PAGA claims; and $17,000 to the CPT Group, Inc., the Class Administrator, for administration costs.  [Doc. No. 59-2 at 6-8.] The Agreement estimates 882 class members, meaning that each class member will receive an average of $1,483 from the gross settlement amount based on the agreed upon allocation.  In exchange for these payments, the settlement agreement defined the Released Claims as including:

> any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney's fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, that were alleged or that reasonably could have been alleged based on the facts alleged in the Lawsuit, as amended, including, but not limited to, any claims under federal law and state law, claims for unpaid overtime, claims for missed meal or rest breaks, claims for meal or rest break penalties, liquidated damages, unlawful deductions from wages, conversion of wages, record-keeping violations, wage-statement penalties, and "waiting time" penalties, claims for unpaid wages and liquidated damages under the Fair Labor Standards Act, claims under the applicable Wage Order and Labor Code sections 201, 202, 203, 218, 218.5, 226, 226.3, 226.7, 510, 512, 558,

---

[1] The instant motion does not explain why counsel waited three months to move to file a motion seeking leave to file the TAC, or, for that matter, why counsel then waited another two months after the TAC was filed to file the instant motion.  In sum, the settlement agreement was executed a full six months before the parties sought approval of the settlement.

> 1194, 1194.2, 1197, as well as claims under Business and Professions Code section 17200 et seq., and Labor Code section 2698 et seq. based on alleged violations of these Labor Code provisions. The Agreement is conditioned upon the release by all Settlement Class Members of any claim under Labor Code section 2699, as to the released claims set forth above, and upon covenants by all members that they will not participate in any proceeding seeking penalties under Section 2699, as to the released claims set forth above. Defendant shall not owe, beyond the amount of Gross Settlement Fund, any further monies to the Settlement Class or to the State of California based upon the claims made in the Lawsuit during the Settlement Period. This release is effective for the Settlement Period.

[Doc. No. 59-1 at 9.]

The Agreement then reiterates that it releases any FLSA claims by Settlement Class Members who cash, deposit, or endorse settlement checks:

> The Parties intend that this agreement shall bind all Settlement Class Members. This Agreement shall constitute, and may be pleaded as, a complete and total defense to any such dispute or claim if raised in the future. The procedure adopted under the Agreement will operate as a release of any FLSA claim by those Settlement Class Members who cash, deposit, or endorse settlement checks.

[Doc. No. 59-1 at 10.]

### III. Legal Standards For Approval of a Settlement of a Hybrid FLSA Collective/Rule 23 Class Action

A Rule 23 class action may not be settled without approval of the court. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998) (citing Fed. R. Civ. P. 23(e)). "The primary concern . . . is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). "Approval of a class action settlement requires a two-step process— a preliminary approval followed by a later final approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). The instant motion involves the first step of the process.

Although the instant motion portrays this case as solely a Rule 23 class action, the settlement purports to settle and release the FLSA claim Plaintiff added in the TAC (as well as any other FLSA claims the class may have).  FLSA claims brought on behalf of similarly situated individuals are frequently referred to as collective actions. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *see also Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000)  Similar to Rule 23 class actions, "[s]ettlement of an FLSA claim, including a collective action claim, requires court approval." *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *see also Dunn v. Teachers Ins. & Annuity Assoc. of Am.*, No. 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) ("Most courts hold that an employee's overtime claim under FLSA is non-waivable and, therefore, cannot be settled without supervision of either the Secretary of Labor or a district court.").

However, "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013).  One of the primary differences is that the "FLSA and Rule 23 provide different means for participating in a class action." *Leuthold*, 224 F.R.D. at 469.  Specifically:

> In a class action, once the district court certifies a class under Rule 23, all class members are bound by the judgment unless they opt out of the suit. By contrast, in a collective action each plaintiff must opt into the suit by "giv[ing] his consent in writing." 29 U.S.C. § 216(b). As result, unlike a class action, only those plaintiffs who expressly join the collective action are bound by its results.

*McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).  Despite these differences, when considering a motion to approve the settlement of either a Rule 23 class or an FLSA collective action before a class or collective has been certified, the Court must first certify the class or collective for the purpose of the settlement. *See generally Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 602-07 (E.D. Cal. 2015).

### IV.     Preliminary Certification of Rule 23 Class

A court "must pay undiluted, even heightened, attention to class certification requirements in a settlement context." *Hanlon,* 150 F.3d at 1019 (internal quotation marks omitted). Thus, before approving the settlement itself, the Court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Id.* In addition, the Court must determine whether class counsel is adequate (Fed. R. Civ. P. 23(g)), and whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (quoting *Amchem Prod. v. Windsor*, 521 U.S. 591, 614 (1997)).

The settlement here envisions a class consisting of "all current and former fleet drivers employed at a Costco business center or depot in California at any time from" October 17, 2010 through October 4, 2016. Thompson seeks certification of this class pursuant to Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### A.     Numerosity

The class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). "A proposed class of at least forty members presumptively satisfies the numerosity requirement." *Valle v. Glob. Exch. Vacation Club*, No. SACV162149DOCJCGX, 2017 WL 433998, at *2 (C.D. Cal. Feb. 1, 2017). Here, the parties estimate approximately 882 Class Members. Joinder of all these potential plaintiffs would be impracticable. Accordingly, this requirement has been met.

#### B.     Commonality

This requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to

satisfy the rule." *Hanlon,* 150 F.3d at 1019. However, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 (1982)). This means that each member's claims must depend upon a common contention capable of classwide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Here, this requirement is satisfied because the class claims involve common questions of law and fact surrounding Defendant's meal and rest period policies, payment of overtime, and payment for all time worked.

### C. Typicality

The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992.)

Here, Thompson's claims and those of putative class members are based on the claims that Costco policies violate various California labor laws. Moreover, Thompson and the putative class members are alleged to have suffered the same injuries, including the non-payment of premiums for alleged meal and rest periods that were not provided, non-payment of overtime wages, and penalties for various other labor code violations. Therefore, for purposes of settlement, Thompson has made an adequate showing of typicality.

### D. Adequacy

The adequacy requirement asks whether the representative "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(2). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462.

Here, Plaintiff's counsel appears to have extensive experience in litigating wage and hour class actions. [See Doc. No. 59-1 at 3.] Further, there is no obvious conflict between Thompson's interests and those of the class members. However, the terms of the settlement, including the release of FLSA claims despite no such claims having been pled at the time of settlement, reflects that Thompson and class counsel may have favored their own interests at the expense of the class members to achieve the settlement. Moreover, the complete failure to recognize this action as hybrid action raises questions as to counsel's understanding of the procedural rules applicable to the FLSA claims it proposes that the class release without compensation. Notwithstanding the foregoing, because the Court is denying the instant motion on other grounds, it need not reach a conclusion at this stage as to whether counsel adequately represents the class.

### E. Predominance and Superiority

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R.Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. "Rule 23(b)(3) permits a party to maintain a class action if . . . 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Connecticut Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1173 (9th Cir. 2011), *aff'd*, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) (citing Fed. R.Civ. P.

23(b)(3)). The Ninth Circuit refers to these questions as the "predominance" and "superiority" inquiries. *Hanlon*, 150 F.3d at 1022-23.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 1022 (quoting *Amchem*, 521 U.S. at 623). "[T]he presence of commonality alone is not sufficient. . . ." *Id*. "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). Further, "[s]ettlement benefits cannot form part of a Rule 23(b)(3) analysis; rather the examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" *Id*. (quoting *Amchem*, 521 U.S. at 623). Here, the main injuries to the putative class members seem to be largely identical and are all alleged to be the result of Defendant's labor policies. Although the scope of the underpayment of wages and the amount of penalties may in the end vary from member to member, the determination of whether the policies at issue actually violate California labor laws predominate over the individual damages issues.

The superiority inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 115CV01474DADBAM, 2016 WL 7426115, at *6 (E.D. Cal. Dec. 22, 2016). The Court is satisfied that in light of the relatively limited potential recovery for the class members as compared with the costs of litigating the claims, each of these requirements weighs in favor of finding that the superiority requirement is satisfied.

Accordingly, in light of the foregoing, for the purposes of settlement Thompson has satisfied the requirements for certification of a class under Rule 23.

## V. Conditional Certification of FLSA Collective Action

The standards for certifying an FLSA collective are not as well-defined as those for Rule 23 class actions. The FLSA provides for a private right of action to enforce its provisions "by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Neither the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined the term 'similarly situated.'" *Millan,* 310 F.R.D. at 607. However, "a Court has a considerably less stringent obligation to ensure fairness of the settlement in a FLSA collective action than a Rule 23 action because parties who do not opt in are not bound by the settlement." *Id.* (internal quotations marks omitted). Accordingly, for all the reasons the class identified in the settlement satisfies the commonality, typicality, and predominance requirements for preliminary certification of a Rule 23 class, it also satisfies the FLSA's less stringent requirement that the members be "similarly situated" for the purposes of the proposed settlement here. Conditional Certification of an FLSA collective is therefore appropriate.

## VI. Review of Settlement Terms

### A. Legal Standards

"At the preliminary approval stage, the Court may grant preliminary approval of a settlement if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Sciortino v. PepsiCo, Inc.*, No. 14-CV-00478-EMC, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016) (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011)). "At the preliminary approval stage, a full fairness analysis is unnecessary." *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (internal quotation marks and citation omitted). "Closer scrutiny is reserved for the final approval hearing." *Sciortino*, 2016 WL 3519179, at *4.

Although the Ninth Circuit has not established a standard for district courts to follow when evaluating an FLSA settlement, California district courts frequently apply the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982). *Dunn*, 2016 WL 153266, at *3. Under that standard, the settlement must constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 29 U.S.C. § 216(b); *Lynn's Food Stores*, 679 F.2d at 1355; *see also Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11, 2014) ("A district court may approve an FLSA settlement if the proposed settlement reflects 'a reasonable compromise over [disputed] issues.'") (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

The standard for approving FLSA collective actions may be nominally different from the standard for approving class actions under Federal Rule of Civil Procedure 23, but "many courts begin with the well-established criteria for assessing whether a class action settlement is fair, reasonable and adequate under [Rule] 23(e) and reason by analogy to the FLSA context." *Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-1821-AWI-EPG, 2016 WL 3077710, at *3 (E.D. Cal. Jun. 2, 2016) (internal quotation marks omitted); *see also Otey v. Crowdflower, Inc.*, No. 12-cv5524-JST, 2014 WL 1477630, at *11 (N.D. Cal. Apr. 15, 2014) ("[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a Rule 23 settlement.").[2] Accordingly, if the settlement here warrants approval under Rule 23(e), it is likely to warrant approval under the FLSA as well.

Federal Rule of Civil Procedure 23(e) instructs that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of

---

[2] *But see Selk v. Pioneers Mem. Healthcare Dist.*, 159 F.Supp. 3d 1164, 1173 (S.D. Cal. 2016) (evaluating an FLSA settlement using a totality of the circumstances approach "that replicates the factors relevant to Rule 23 class actions where appropriate, but adjusts or departs from those factors when necessary to account for the labor rights at issue.")

a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id*. at 1026. This determination requires the Court to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. Further, because the Settlement Agreement here was negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011)). However, "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane*, 696 F.3d at 819. Ultimately, a "district court's final determination to approve the settlement should be reversed 'only upon a strong showing that the district court's decision was a clear abuse of discretion.'" *Hanlon*, 150 F.3d at 1027 (quoting *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995)).

### B. Analysis

If the settlement here were solely for the California wage and hour claims and the release did not include FLSA claims, the Court likely would be able to preliminarily approve it with only minor revisions to the class notice. The inclusion of FLSA claims,

however, renders this settlement improper. Indeed, the many flaws in this proposed settlement demonstrate why the question of whether a Rule 23 class action can co-exist with a related FLSA collective action has divided district courts in the Ninth Circuit. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1093 (9th Cir. 2011). These numerous deficiencies must be remedied in any subsequent motion for preliminary approval of a settlement.

First, as discussed above, the motion does not explicitly request certification of an FLSA collective action, even though it clearly contemplates the existence of a collective action insofar as the agreement and notice to the class specify that by cashing their settlement checks, class members will have opted in to the FLSA claim.

Second, as currently structured, the settlement requires Rule 23 class members to release FLSA claims to benefit from the settlement of the state law claims. At the same time, the motion goes out of its way to explain why no separate value is being paid for the FLSA claim. [Doc. No. 59 at 16.] As a result, "Class Members are assessed a penalty (in the full amount of their share of the settlement) for not opting-into the FLSA class." *Sharobiem v. CVS Pharmacy, Inc.*, No. CV139426GHKFFMX, 2015 WL 10791914, at *3 (C.D. Cal. Sept. 2, 2015). As discussed in *Sharobiem*, the legality of this opt in structure is suspect.

Third, and related to the previous issue, the fact that the settlement calls for a release of an FLSA claim in exchange for no consideration is problematic. "No one should have to give a release and covenant not to sue in exchange for zero (or virtually zero) dollars." *Daniels v. Aeropostale West, Inc.*, No. C 12-5755 WHA, 2014 WL 2215708, at *3 (N.D. Cal. May 29, 2014); *see also Selk v. Pioneers Mem. Healthcare Dist.*, 159 F.Supp. 3d 1164, 1178 (S.D. Cal. 2016) ("Only when opt-in plaintiffs receive independent compensation, or provide specific evidence that they fully understand the breadth of the release, will a broad release of claims survive a presumption of unfairness."). It is no answer to say that members deserve nothing so no harm is done in extracting the release and covenant. *Daniels*, 2014 WL 2215708, at *3. A release of FLSA claims in exchange for no

consideration is not "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 29 U.S.C. § 216(b). As a result, courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims. *Millan*, 31 F.R.D. at 602; *see also Khanna v. Intercon Sec. Systems, Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *2 (E.D. Cal. Apr. 8, 2014) (approving hybrid settlement that allocated two-thirds of net settlement amount to state claims and one-third of net settlement amount to FLSA claims); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 1878918, at *3 (N.D. Cal. May 3, 2013) (same). If Costco wants a release of a bona fide FLSA claim, it should have to pay fair and reasonable consideration for that release. On the other hand, if there is no bona fide dispute over FLSA provisions (which appears to be the case based on the declaration from Plaintiff's counsel), Plaintiff should dismiss the FLSA claim from the complaint without prejudice, and the parties can limit their settlement to the Rule 23 class action claims.

Fourth, the motion provides no evidence or information that would allow the Court to evaluate the reasonableness of the settlement amount itself. At a minimum, Plaintiff should provide an estimate of the total potential recovery and explain how the parties arrived at the settlement amount so the Court can determine what percentage recovery the class is receiving. Plaintiff's counsel's conclusion that the settlement is fair and reasonable does not suffice. *Millan*, 310 F.R.D. at 611 ("To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated.").

Fifth, the notice to the class is not adequate. In an FLSA action, "the court must provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.'" *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). In light of this requirement, and because of the inherent differences between Rule 23 class actions and

FLSA collective actions, courts considering approval of settlements in these hybrid actions consistently require class notice forms to explain: "(1) the hybrid nature of th[e] action; and (2) the claims involved in th[e] action; (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collection action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing." *Pierce*, 2013 WL 1878918 at *4; *see also Sharobiem,* 2015 WL 10791914, at *4 (noting that because the proposed claim form did not distinguish between a Rule 23 class action and FLSA class action, it was "not clear and easy to follow").

Here, the proposed notice lists all of the claims asserted in the complaint, but it does not acknowledge the hybrid nature of this lawsuit. Most significantly, however, it does not provide any mechanism for a recipient to participate in the Rule 23 class but not opt in to the FLSA collective action. Instead, the notice states that Rule 23 class members who "accept any payments pursuant to the settlement will be deemed to have opted into the FLSA claim." [Doc. No. 59-2 at 6.] To remedy this deficiency, if the parties wish to continue with a settlement of both California and FLSA claims, any notice must: (1) explain how much of the settlement amount will be paid for the release of the FLSA claims; (2) explain and provide a mechanism for recipients to opt in to the collective action that complies with the FLSA; and (3) explain the consequences of opting into the FLSA collective, opting out of the Rule 23 class, or doing nothing.[3] Alternatively, Plaintiffs can dismiss their FLSA claims without prejudice and seek approval solely of a Rule 23 class for the California claims, without any release of FLSA claims for class members.

---

[3] Necessarily, a prerequisite to remedying this deficiency in the notice is to reach an agreement as to a settlement fund in exchange for the release of FLSA claims. The Court will not approve a settlement that asks members of the collective to release FLSA claims without compensation for doing so.

In addition to deficiencies related to the differences between FLSA opt in actions and Rule 23 opt out actions, the notice is also deficient for the following reasons:

1. The proposed notice does not clearly identify the Class Administrator, provide its telephone number, or provide an address where absent class members can send their opt-in and opt-out forms.
2. The proposed notice states that absent class members who want to obtain a copy of the settlement agreement must obtain it from the court. This is unduly burdensome. The settlement agreement and related documents either should be made available for public viewing on a website maintained by Plaintiff's counsel or the class administrator, or the notice should state that the Plaintiff's counsel or the claims administrator will provide a copy of the Settlement Agreement and other documents related to the settlement free of charge either via United States Mail or e-mail upon request.
3. The proposed notice does not explicitly notify class members that they have the right to object to the specific attorney's fees and costs and incentive award sought.

Each of these deficiencies must be remedied before the Court can preliminarily approve the settlement.

**VII. Propriety of Third Amended Complaint**

"By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Frivolous pleadings may be the subject of sanctions even though they are included in pleading containing other

nonfrivolous request for relief. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990); *see also Burnette v. Godshall*, 828 F. Supp. 1439, 1447-48 (N.D. Cal. 1993) (Rule 11 sanctions shall be imposed whether pleading or motion is frivolous in whole or in part).

Here, the parties executed the Settlement Agreement in June 2016. As discussed above, the Settlement Agreement included a release of FLSA claims in exchange for no additional compensation to the class. Nearly five months later, Plaintiff filed the TAC, which added an FLSA claim. Just two months after that, counsel for Plaintiff filed a declaration stating that "Plaintiff has analyzed the potential value of the FLSA claims and has concluded that they are worth very little to nothing such that the release of said claims should not prejudice Settlement Class Members." [Doc. No. 59-1 at 11, ¶ 36.] Presumably, counsel's analysis and conclusion that the FLSA claims were worth little to nothing occurred prior to execution of the Settlement Agreement which included a release of such claims on behalf of the proposed class in exchange for no consideration. If so, that means that Plaintiff's counsel filed an amended complaint that added an FLSA claim that counsel knew at the time was "worth very little to nothing." Moreover, the motion itself, and the complete lack of consideration that counsel and Thompson agreed to accept in exchange for a release of FLSA claims, indicates that the FLSA claim is actually worth nothing. Another way to describe the FLSA claim that is worth nothing could be that it is not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. *See* Fed. R. Civ. P. 11(b)(2). Thus, counsel's inclusion of the FLSA claim in the TAC after having reached the conclusion that it was worth nothing violates Rule 11(b)(2).

### VIII. Conclusion

In light of the above, it is hereby **ORDERED** that Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement is **DENIED**. Plaintiff may file a renewed motion for preliminary approval on or before **March 20, 2017**.

1    It is further **ORDERED** that, David Mara, who signed the TAC, and the Turley Law
2  Firm, APLC, must **SHOW CAUSE** in writing, on or before **March 3, 2017** why the Court
3  should not impose an appropriate sanction for a violation of Rule 11 by including the FLSA
4  claim in the TAC.
5    It is **SO ORDERED**.
6  Dated:  February 22, 2017

                                    _____
                                    Hon. Cathy Ann Bencivengo
                                    United States District Judge