THE TURLEY & MARA LAW FIRM, APLC
William Turley (SBN 122408)
bturley@turleylawfirm.com
David Mara (SBN 230498)
dmara@turleylawfirm.com
Jill Vecchi (SBN 299333)
jvecchi@turleylawfirm.com
7428 Trade Street
San Diego, CA 92121
Telephone:   (619) 234 2833
Facsimile:   (619) 234 4048

Attorneys for Plaintiff
DOUGLAS THOMPSON

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS THOMPSON on behalf of himself, others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION and DOES 1 through 100, Defendants. | Case No.:  14-cv-2778-CAB-WVG<br><br>*District Judge Hon. Cathy Ann Bencivengo and Magistrate Judge Hon. William V. Gallo*<br><br>**PLAINTIFF'S NOTICE OF RENEWED MOTION AND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF CLASS CLAIMS, AND CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION**<br><br>Date: April 21, 2017<br>Time: 9:00 a.m. (or a time to be determined by the Court)<br>Judge: Hon. Cathy Ann Bencivengo<br>Courtroom: 4C<br><br>PER CHAMBERS, NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT<br><br>Action Filed: October 17, 2014<br>FAC Filed: January 12, 2015<br>SAC Filed: February 10, 2015 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TAC Filed: October 3, 2016
Action Removed: November 20, 2014

**TO:  ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 21, 2017, at 9:00 a.m. (or a time to be determined by the Court) or as soon thereafter as the matter can be heard in Courtroom No. 4C in the above entitled courthouse located at 221 West Broadway, San Diego, California 92101. Plaintiff Douglas Thompson (hereinafter "Plaintiff" or "Mr. Thompson") will move this Court for an order:  (1) Provisionally certifying the Stipulated Class and Collective for settlement purposes only; (2) Preliminarily approving the class action settlement embodied in the Joint Stipulation for Class/Collective Action Settlement and Release of Claims; (3) Approving the Notice Packet to Stipulated Class/Collective Members (collectively, "Notice Packet") and the plan for distribution of the Notice Packet to Stipulated Class/Collective Members; (4) Appointing CPT Group, Inc. as the Settlement Administrator; (5) Scheduling a Final Approval Hearing; and (6) enjoining Stipulated Class Members from prosecuting any released claims unless and until he or she files a valid request for exclusion. Defendant Costco Wholesale Corporation (hereinafter "Defendant" or "Costco") does not oppose this Motion.

This motion is based upon this notice, the accompanying Memorandum of Points & Authorities filed herewith, the accompanying Declaration of William Turley filed herewith, the Joint Stipulation for Class/Collective Action Settlement and Release of Claims and all exhibits thereto, the filings on record in this case, and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

Dated: March 30, 2017                    **THE TURLEY & MARA LAW FIRM**

By: /s/ *David Mara*
       William Turley, Esq.
       David Mara, Esq.
       Jill Vecchi, Esq.
       Attorneys for Plaintiff

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

   A.   INVESTIGATION ..............................................................................5

   B.   SETTLEMENT NEGOTIATIONS ...........................................................6

III.   SUMMARY OF SETTLEMENT ...........................................................6

   A.   THE PROPOSED STIPULATED CLASS AND FLSA COLLECTIVE............6

   B.   SETTLEMENT TERMS .......................................................................7

    i.   Service Award and Release Payments.........................................8

    ii.   Attorneys' Fees and Costs ........................................................8

    iii.   LWDA Payment .......................................................................8

    iv.   Settlement Administration Costs ................................................8

    v.   Settlement Payments to Participating Class Members Paid Out of the Stipulated Class Net Settlement Fund .........................................9

    vi.   Settlement Payments to Participating FLSA Collective Members Paid out of the FLSA Collective Net Settlement Fund. ..................................10

   C.   RELEASE OF CLAIMS BY PARTICIPATING CLASS MEMBERS – LIMITED TO CLAIMS ALLEGED OR COULD HAVE BEEN ALLEGED BASED ON THE FACTS ALLEGED ........11

    i.   Scope of Release.......................................................................11

   D.   RELEASE OF CLAIMS LIMITED TO FLSA CLAIMS ALLEGED OR COULD HAVE BEEN ALLEGED BASED ON THE FACTS ALLEGED IN THE LAWSUIT ................................13

IV.   THE SETTLEMENT CLEARLY MEETS THE STANDARD FOR PRELIMINARY APPROVAL ...............................................................13

   A.   THE SETTLEMENT RESULTED FROM ARM'S-LENGTH NEGOTIATIONS ...............15

   B.   THE BALANCING OF THE FACTORS – THE $2,000,000 GROSS SETTLEMENT REFLECTS A REASONABLE AND VALUABLE COMPROMISE OF THE COMPLEX

CLAIMS INVOLVED THAT TAKES INTO ACCOUNT THEIR STRENGTH AND RISKS OF

PROTRACTED LITIGATION AND FAILING ON THE MERITS ................................... 16

V.   NATURE AND METHOD OF CLASS NOTICE ........................................... 22

VI.  SETTLEMENT ADMINISTRATION .................................................... 24

VII. CONCLUSION ................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Bamonte v. City of Mesa*, 598 F.3d 121(9th Cir. 2010)..........................................19, 21

*Brinker Restaurant Corp. v. Superior Court*,  53 Cal.4th 1004 (2012).......................21

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)................................14

*Espinoza v. County of Fresno*,  2011 U.S. Dist. LEXIS 85401 (E.D. Cal. 2011)..19, 22

*Gatreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982).......................................................14

*In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..........14

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000).........................................................13

*Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)....................................................................................................................15

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615 (C.D. Cal. 1982) ................................................................................14, 15

*Pierce v. Rosetta Stone, Ltd.*, 2013 WL 1878918 (N.D. Cal. 2013) ...........................23

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ...........................15

*Telecomm. Corp. v. DirectTV*,  221 F.R.D. 523 (C.D. Cal. 2004) ..............................22

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)................................................4

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir.1983) ....................................................16

**OTHER AUTHORITIES**

2 *Newberg on Class Actions* §11.24 (4th Ed. & Supp. 2002) ...............................16, 23

*Manual for Complex Litigation*, Fourth, § 22.661 (2004)................................14, 15, 16

## MEMORANDUM OF POINTS & AUTHORITIES

## I.  INTRODUCTION

Plaintiff, a former driver for Defendant, filed this wage and hour class action, alleging that Defendant violated California labor laws by failing to pay wages for all hours worked, failing to pay overtime, failing to provide lawful meal breaks, failing to provide lawful rest breaks, failing to timely pay wages to employees whose employment had terminated, and failing to provide accurate itemized wage statements. Plaintiff further alleges that Defendant violated the unfair competition law (Bus. & Prof. Code § 17200, *et seq.*), California Private Attorney Generals Act ("PAGA"), and the Fair Labor Standards Act. Plaintiff brought this class/collective action lawsuit on behalf of himself and all currently and formerly employed drivers of Defendant in the state of California from October 17, 2010 through October 4, 2016.[1] Plaintiff now seeks preliminary approval of the Joint Stipulation for Class/Collective Action Settlement (hereinafter "Agreement"), which will resolve this action in its entirety.

If approved by the Court, the Settlement will create a gross settlement fund (hereinafter referred to as "Settlement Sum") in the amount of $2,000,000 for approximately 882 employee drivers. The Settlement Sum includes payments made to Settlement Class/Collective Members, payments to the Labor and Workforce Development Agency on Plaintiff's PAGA claims, settlement administration costs, awards of attorneys' fees and costs, all applicable employer payroll tax payments, and a service award to Plaintiff as set forth in Section III, below. The Settlement is non-reversionary.

Plaintiff requests that the Court grant preliminary approval of this Settlement, as, when analyzing the strengths and vulnerabilities of the claims along-side Defendant's potential liability exposure, this proposed non-reversionary settlement of $2,000,000, which is projected to pay each individual who participates in the class and FLSA

---

[1] October 4, 2016 is the date 85 days after Plaintiff signed the Joint Stipulation of Class Action Settlement.

collective settlement an estimated average of approximately **$1,664** – less employee/employer taxes for the settlement shares devoted to wages – is fair, reasonable, and adequate.

The Settlement here involves the resolution and release of both class claims and collective claims under the FLSA. The class claims under California law for unpaid wages, unprovided meal and rest periods, failure to itemize wage statements, and failure to pay all wages at the time of termination make up most of the settlement. To participate in the settlement and receive a class settlement payment, class members do not have to submit a claim. Class members will receive a settlement share that is disclosed to them in the notice of settlement, unless they affirmatively request exclusion from the settlement as explained in the notice and settlement agreement.

The FLSA collective claims are for unpaid minimum wages and overtime, as well as liquidated damages for willful violations. These claims under the FLSA are for the same facts as the state wage claims, i.e., Plaintiff's contention that he and the class remain under the company's control during unpaid meal periods. Unlike California claims, FLSA claims cannot be settled without an opt-in mechanism. This settlement satisfies that requirement, because, to settle the FLSA claims, the FLSA collective members will not release their FLSA claims unless they submit a claim form.

On December 2, 2016, Plaintiff filed his initial motion for preliminary approval. In its February 22, 2017 Order, the Court found that Class Certification of the class claims in the proposed settlement was proper, as well as conditional certification of the collective claims; the Court denied preliminary approval and permitted Plaintiff to file a renewed motion for preliminary approval that addresses the following concerns:

1. Plaintiff must request conditional certification of the FLSA Collective.

2. Rule 23 Class Members cannot be required to "release FLSA claims to benefit from the settlement of state law claims." (See Court's Order, 13:12).

3. There must be compensation separately stated for the FLSA claims.

4.   The motion must "estimate" the "total potential recovery and explain how the parties arrived at the settlement amount so the Court can determine what percentage recovery the class is receiving." (See Court's Order, 14:16-19).

5.   The Notice of Settlement must explain the hybrid nature of the FLSA collective and class state claims, provide a "mechanism for a recipient to participate in the Rule 23 class but not opt in to the FLSA collective action" (See Court's Order, 15:13-14), "explain how much of the settlement will be paid for the release of the FLSA claims," "explain and provide a mechanism for recipients to opt in to the collective action that complies with the FLSA," "explain the consequences of opting into the FLSA collective, opting out of the Rule 23 class, or doing nothing," (Court's Order, 15:17-21), identify the Settlement Administrator by its phone number or address where participants can send their opt-in's and/or opt-out's, advise that Plaintiff's counsel will "provide a copy of the Settlement Agreement and other documents related to the settlement free of charge either via United States Mail or e-mail upon request" (Court's Order, 16:11-13), and tell Class/Collective Members they can object to the requested attorney's fees and costs and incentive award.

In the revised settlement agreement and supporting papers, Plaintiff addresses all these areas. Specifically, FLSA Collective Members now will receive a separate claim form to opt-in to an FLSA claim; therefore, participation in the Class Settlement does not require release of FLSA Collective Claims. The separately stated compensation for the FLSA claim is ten percent of the Gross Settlement Fund after applicable court-approved deductions and applicable employer/employee taxes are deducted. The total potential recovery is estimated and how the settlement amount was arrived at is explained. The Notice explains the "hybrid nature of the claims" as it relates to FLSA Collective and state Class Claims and, namely, the different mechanisms of how Collective and Class Members can participate is clearly communicated. The Notice also

1  explains how much class members can expect to receive under the FLSA Collective and
2  Class Claims, explains the consequences of opting into the FLSA, opting out of the
3  Class Settlement, and doing nothing. Finally, the Notice provides contact information
4  for the Settlement Administrator, advises that Class/Collective Counsel will provide all
5  settlement documents free of charge upon request, and states that class/collective
6  members can object to the requested attorneys' fees and costs and class representative
7  incentive award.

8       In light of these changes, it is respectfully requested the Court grant Plaintiff's
9  motion for preliminary approval.

10      The settlement provides the proposed settlement was reached only after
11  considerable litigation and undertaking of a robust factual and legal investigation into
12  Defendant's pay structures, wage and hour polices, and route details and after an all-
13  day, arms-length mediation with prominent California wage and hour mediator, Mark
14  Rudy. The settlement takes into consideration the risk that certification may not be
15  granted and, if so, that it may not be maintained under principles outlined by the U.S.
16  Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). In addition
17  to factoring in uncertainties with certifying the matter as a class action, the proposed
18  settlement also takes into account Defendant's affirmative defenses, which, if
19  successful, would result in Plaintiff taking nothing for his claims.

20      Plaintiff therefore requests that the Court grant Plaintiff's Motion for Preliminary
21  Approval of Class Action Settlement, approve the Notice Packet to Stipulated Class and
22  Collective Members, appoint CPT Group, Inc. as the Settlement Administrator, and
23  schedule a Final Approval Hearing. Plaintiff further requests that this Court
24  provisionally certify a settlement class and an FLSA Collective for the reasons stated in
25  the February 28, 2017 Order – reasons which have not changed with the modifications
26  made to the settlement and Notice.[2]

27
28

---

[2] Plaintiff invites the Court's attention to its February 22, 2017 Order, ECF No. 60, Sections IV and V, wherein the Court granted conditional certification of class and

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case involves California wage and hour claims against Defendant, a membership-only warehouse club that provides a wide selection of merchandise. On October 17, 2014, Plaintiff filed a complaint in the Superior Court of California for the County of San Diego entitled *Thompson v. Costco Wholesale Corporation*, Case No. 37-2014-00035493-CU-OE-CTL. Turley Decl. ¶ 11. On November 20, 2014, Defendant filed with the Court a notice of removal of that complaint. *Id.*

On January 12, 2015, Plaintiff filed a First Amended Complaint. *Id.* ¶ 12. On February 10, 2015, Plaintiff filed a Second Amended Complaint (*id.* ¶ 13), which claims (1) wage theft/time shaving; (2) failure to pay overtime; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to pay compensation for all time worked; (6) waiting time penalties; and (7) violation of unfair competition law. *Id.* On October 3, 2016, Plaintiff filed a Third Amended Complaint (*id.* at ¶ 14; *see also* Dkt. 57), which adds claims under the Fair Labor Standards Act (FLSA), the Private Attorney Generals Act (PAGA); and for knowing and intentional failure to furnish accurate itemized wage statements. *Id.*

### a.  <u>Investigation</u>

Discovery and litigation in the matter were vigorous. Voluminous amounts of discovery were produced and multiple depositions took place. After the Parties conducted their Rule 26(f) conference, Plaintiff served on Defendant Requests for Production of Documents, Interrogatories, and a 30(b)(6) deposition notice. Turley Decl. ¶ 15. Defendant timely served its initial disclosures on May 26, 2015. *Id.* Defendant also timely served its responses and objections to Plaintiff's document requests and interrogatories, and produced responsive documents, on June 4, 2015. *Id.* Thereafter, on October 21, 2015, Defendant produced additional interrogatory responses and responsive documents. *Id.* In total, over 4,700 documents were produced.

---

collective claims. Because nothing has changed to alter those rulings the elements of conditional certification of the class and FLSA collective will not be belabored here.

*Id.* These documents included, but are not limited to, Plaintiff's personnel file, pay stubs, class information, operational policies, meal and rest break policies, driver route data, and driver logs. *Id.* The Parties conducted two FRCP 30(b)(6) depositions on November 11, 2015 and November 20, 2015. Plaintiff's deposition went forward on November 13, 2015. *Id.* at ¶ 16.

The Parties then decided to go to mediation and discussed what further discovery was needed to facilitate mediation. *Id.* at ¶ 17. On November 25, 2015, Plaintiff sent Defendant a list of informal discovery needed to evaluate the case and the possibility of settlement. *Id.* Defendant then began gathering this information and provided it to Plaintiff throughout December 2015. *Id.*

### b. <u>Settlement Negotiations</u>

On March 11, 2016, the Parties engaged in a lengthy private mediation with the highly respected wage and hour mediator, Mark Rudy. Turley Decl. ¶ 18. At the conclusion of this mediation, Mr. Rudy offered both parties his Mediator's Proposal. *Id.* After additional discussions, this proposal was revised and resulted in a "Memorandum of Understanding." *Id.*

## III.    SUMMARY OF SETTLEMENT

The terms of the settlement are set forth in the Agreement attached as Exhibit 1 to the Turley Declaration. The settlement addresses a hybrid proceeding in that it proposes to settle class claims conditionally certified under FRCP Rule 23 and collective action claims conditionally certified under the FLSA, 29 U.S.C. section 216. The principal terms are as follows:

### a. <u>The Proposed Stipulated Class and FLSA Collective</u>

The proposed "Stipulated Class" comprises all current and former fleet drivers employed at a Costco business center or depot in California from October 17, 2010 through October 4, 2016. Turley Decl. at ¶ 20. A subclass of the Stipulated Class consists of Stipulated FLSA Collective Members, Stipulated Class members during the time period beginning October 17, 2011, as opposed to October 17, 2010. *Id.*

### b. <u>Settlement Terms</u>

Under the proposed Settlement, Defendant shall pay $2,000,000. Turley Decl. at ¶ 21. This Gross Settlement Fund ("GSF") includes payments made to Participating Class Members, Participating FLSA Collective Members, settlement administration costs, awards of attorneys' fees and costs, the service award for Plaintiff, employer/employee payroll taxes on the portion of the settlement payments to Participating Class/Collective Members deemed as wages, and payment to the California Labor & Workforce Development Agency. *Id.*

To account for the fact that the claims being settled here are FLSA Collective and Rule 23 Class claims, the GSF will create two net settlement funds. Turley Decl. at ¶ 22. Participating Class Members, i.e., those class members who do not request to be excluded from the Stipulated Class, will receive payment from the Stipulated Class Net Settlement Fund, which will be discussed below. Participating FLSA Collective Members will be paid out of what the settlement refers to as the Stipulated FLSA Collective Net Settlement Fund, which will also be described and discussed in the following section. *Id.*

Paying out of separate net settlement funds ensures that independent and separate consideration is being given for FLSA Collective Claims and Class Claims. Two net settlement funds also assures that a settlement beneficiary's decision to accept or reject one settlement amount does not affect eligibility to receive the other settlement amount. Having two independent, mutually exclusive net settlement funds means, for example, a settlement beneficiary could decide to not opt-in to the FLSA settlement and thus not be bound by the FLSA release, yet decide to participate in, be bound by, and receive a settlement payment under the settlement of class claims.

Here is how the GSF will be allocated and the net settlement funds created:

/ / /

/ / /

### i.   Service Award and Release Payments

Subject to Court approval, Plaintiff shall be paid a service award not to exceed $5,000 for his time and effort in bringing and presenting the action, and in exchange for a general release of all claims, known or unknown, pursuant to Civil Code §1542. Turley Decl. ¶ 23. Any enhancement awards shall be paid from the GSF and in the event Plaintiff is awarded less than requested, the remainder shall be redistributed pro-rata to class members. *Id.*

### ii.   Attorneys' Fees and Costs

Subject to Court approval, Plaintiff's Counsel shall request an award of attorneys' fees in an amount not to exceed $500,000, representing one-quarter, or 25%, of the GSF. Turley Decl. ¶ 24. Said fee includes all of the work remaining to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered, and obtaining dismissal of the action. *Id.*

Also subject to Court approval, Plaintiff's Counsel shall request a reimbursement from the GSF for litigation costs in an amount not to exceed $20,000. Turley Decl. ¶ 25. Litigation costs and attorney fees amount to a total of 26% of the GSF and, in the event counsel is awarded less than requested, the difference shall be redistributed pro-rata to class and collective members. *Id.*

### iii.   LWDA Payment

Subject to Court approval, $10,000 of the GSF shall be allocated to settlement of PAGA claims—75% of which shall be paid to the California Labor & Workforce Development Agency ("LWDA") and 25% of which shall be split equally amongst the Net Settlement Funds and distributed to Settlement Class and FLSA Collective Members. Turley Decl. ¶ 26.

### iv.   Settlement Administration Costs

The Parties have agreed to the appointment of CPT Group, Inc. (hereinafter referred to as "CPT") as the Settlement Administrator. Turley Decl. ¶ 27. CPT is an

experienced class administration company, and has acted as claims administrator in numerous wage and hour cases throughout the country. *Id.* CPT has provided an estimate that its expenses will not exceed $20,000 to administer this settlement, which falls within the range of estimates counsel has been quoted and billed in the past with settlements of similar size and circumstances. *Id.* The parties have agreed that this sum will be paid out of the GSF and in the event the Settlement Administrator is awarded less than requested, shall be redistributed pro-rata to class members. *Id.* Settlement Administration Costs in excess of $20,000 shall be deducted from the Class Counsel Payment. *Id.*

> v. <u>Settlement Payments to Participating Class Members Paid Out of the Stipulated Class Net Settlement Fund</u>

Stipulated Class Members who do not opt out of the settlement are Participating Class Members. Turley Decl. ¶ 28. The money available for payout comes out of the Stipulated Class Net Settlement Fund, which is 90% of what remains of the Gross Settlement Fund after subtracting the court approved attorney fees and litigation costs, enhancement payment, LWDA Payment, and Settlement Administration Costs. *Id.* The Stipulated Class Net Settlement Fund is estimated to be $1,320,750. *Id.*

The entire Stipulated Class Net Settlement Fund will be distributed, with the limited exception of those funds from checks remaining uncashed after 180 days from issuance, after reasonable steps have been taken within the 180-day period to locate those class members who have not yet cashed their checks. Turley Decl. ¶ 29. Pursuant to the Agreement, any such uncashed funds shall go to the California Unclaimed Wages Fund in the name of the Participating Class Members who did not cash the settlement check or whose checks were undeliverable. *Id.*

Each Participating Class Member will receive a share of the Stipulated Class Net Settlement Fund that is equal to (i) the number of daily shifts worked by the Individual Participating Class Member during the Class Settlement Period, according to Costco's records, divided by the total number of all daily shifts worked by Stipulated Class

Members during the Class Settlement Period, according to Costco's records, (ii) multiplied by the number of daily shifts worked by the Individual Participating Class Member during the Class Settlement Period, according to Costco's records, (iii) minus the applicable state and federal employer/employee taxes for the portion of the payment representing wages. Turley Decl. ¶ 30. Furthermore, if a Participating Class Member terminated employment at Costco since October 17, 2011, the number of shifts allocated to that Settlement Class Member will be increased by 15. *Id.*

The parties believe that this allocation method is an accurate and reasonably achievable method for distribution of the Stipulated Class Net Settlement Fund. Based only on the estimated Stipulated Class Net Settlement Fund of $1,320,750 and approximately 882 class members, the average individual class settlement amount projects to be $1,497.

> vi. <u>Settlement Payments to Participating FLSA Collective Members Paid out of the FLSA Collective Net Settlement Fund.</u>

Stipulated FLSA Collective Members who submit a claim form to opt into the FLSA Collective Settlement are Participating FLSA Collective Members. Turley Decl. at ¶ 31. The money available for payout to Participating FLSA Collective Members comes out of the Stipulated Collective Net Settlement Fund, which is 10% of what remains of the Gross Settlement Fund after subtracting the court approved attorney fees and litigation costs, enhancement payment LWDA Payment, and Settlement Administration Costs. The Stipulated FLSA Collective Net Settlement Fund is estimated to be $146,750. *Id.*

The entire FLSA Collective Net Settlement Fund will be distributed, with the limited exception of those funds from checks remaining uncashed after 180 days from issuance, after reasonable steps have been taken within the 180-day period to locate those Participating FLSA Collective Members who have not yet cashed their checks. Turley Decl. at ¶ 32. Pursuant to the Agreement, any such uncashed funds shall go to the California Unclaimed Wages Fund in the name of the Participating FLSA Collective

1  Members who did not cash the settlement check or whose checks were undeliverable.

2  *Id*.

3          Each Participating Collective Member is entitled to an Individual Settlement

4  Payment out of the Stipulated FLSA Collective Net Settlement Fund. The Administrator

5  will determine the Individual Settlement Payment for each Participating Collective

6  Member according to the following formula: Each Participating Collective Member will

7  receive a share of the Stipulated FLSA Net Settlement Fund that is equal to (i) the

8  number of daily shifts worked by the Individual Participating Collective Member during

9  the FLSA Collective Settlement Period, according to Costco's records, divided by  the

10  total number of daily shifts worked by all Stipulated FLSA Collective Members during

11  the FLSA Collective Settlement Period, according to Costco's records, (ii) multiplied

12  by the number of daily shifts worked by the Individual Participating Collective Member

13  during the FLSA Collective Settlement Period, according to Costco's records, (iii)

14  minus the applicable state and federal employer/employee taxes to the portion of the

15  payment that is devoted to wages. Turley Decl. ¶ 33.

16          The parties believe that this allocation method is an accurate and reasonably

17  achievable method for distribution of the Stipulated FLSA Collective Net Settlement

18  Fund. Based only on the estimated Stipulated FLSA Collective Net Settlement Fund of

19  $146,750 and approximately 882 class members, the average individual collective

20  member payout projects to be approximately $166.

21      c.  **Release of Claims by Participating Class Members – Limited to claims**
        **alleged or could have been alleged based on the facts alleged**

22          i.  Scope of Release

23          Settlement Class Members release all claims and waive any further attempt –

24  through lawsuit, administrative action, demand, or other action of any kind (including

25  participation to any extent in any representative, class, or collective action) – to obtain

26  a recovery based on any Released Claim (defined below) for any injury arising during

27

28

the Settlement Period. This release and waiver will, upon Final Approval, release and discharge the Released Parties.[3] Turley Decl. ¶ 34.

The Released Claims include any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney's fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, that were alleged or that reasonably could have been alleged based on the facts alleged in the Lawsuit, as amended, including, but not limited to, any claims under federal law and state law, claims for unpaid overtime, clams for missed meal or rest breaks, claims for meal or rest break penalties, liquidated damages, unlawful deductions from wages, conversion of wages, record-keeping violations, wage-statement penalties, and "waiting time" penalties, claims for unpaid wages and liquidated damages under the Fair Labor Standards Act, claims under the applicable Wage Order and Labor Code sections 201, 202, 203, 218, 218.5, 226, 226.3, 226.7, 510, 512, 558, 1194, 1194.2, 1197, as well as claims under Business and Professions Code section 17200 et seq., and Labor Code section 2698 et seq. based on alleged violations of these Labor Code provisions. Turley Decl. ¶ 35. The Agreement is conditioned upon the release by all Settlement Class Members of any claim under Labor Code section 2699, as to the released claims set forth above, and upon covenants by all members that they will not participate in any proceeding seeking penalties under Section 2699, as to the released claims set forth above. *Id.* Defendant shall not owe, beyond the amount of Gross Settlement Fund, any further monies to the Settlement Class or to the State of California based upon the claims made in the Lawsuit during the Settlement Period. *Id.* This release is effective for the Settlement Period. *Id.*

---

[3] "Released Parties" means Costco and all present and former subsidiaries, affiliates, and joint ventures, and all shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, successors and assigns, and any other persons acting by through, under or in concert with any of them.

The Parties intend that this Agreement shall bind all Settlement Class Members. Turley Decl. ¶ 36. This Agreement shall constitute, and may be pleaded as, a complete and total defense to any such dispute or claim if raised in the future. *Id.* The procedures adopted under the Agreement will operate as a release of any FLSA claim by those Settlement Class Members who cash, deposit, or endorse settlement checks. *Id.*

In addition, with regard to claims that were brought or that reasonably could have been brought based on the facts alleged in the Lawsuit, Settlement Class Members waive all rights and benefits afforded by section 1542 of the Civil Code of the State of California, and do so understanding the significance of that waiver. Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Turley Decl. ¶ 37.

### d. Release of Claims limited to FLSA claims alleged or could have been alleged based on the facts alleged in the lawsuit

In exchange for Costco's promise to make the payments provided for in this Settlement Agreement, Participating FLSA Collective Members will release all FLSA claims that were alleged or that reasonably could have been alleged based on the facts alleged in the Lawsuit. Turley Decl. ¶ 38. As the following shows, the settlement is a reasonable compromise of the claims raised in the lawsuit, as it adequately reflects a fair compromise of and consideration for claims based on their strengths and risks of failing on the merits.

## IV. THE SETTLEMENT CLEARLY MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether

a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. June 10, 2005), citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Court approval involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to Class Members, whether final approval is warranted. *Manual of Complex Litigation*, Fourth Ed., § 21,632 (2004); s*ee also Hanlon*, *supra*, at 1019. "The court ordinarily holds a preliminary hearing to determine whether there is a likelihood it could approve the settlement before conducting a full 'fairness hearing.'" At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). A class action settlement should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *See also Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982) ("the court's intrusion on what is otherwise a private consensual agreement negotiated between Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned"). There is a "strong initial presumption that the compromise is fair and reasonable." *Hanlon*, *supra*, at 1019. Courts strongly favor settlement, particularly in complex class actions. *See*, *e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that there is a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned").

Although at preliminary approval, the Court need not engage in the rigorous analysis required for final approval (*see Manual for Complex Litigation*, Fourth,

§ 22.661 at 438 (2004)), the ultimate fairness determination will include balancing several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement. *Officers for Justice*, *supra*, 688 F.2d 615, 625.

Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). District courts have wide discretion in assessing the weight and applicability of each factor. *Id.*

### a. The Settlement Resulted from Arm's-Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] Parties." *Id.* at 965, citing *Hanlon*, *supra*, at 1027. The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral (in this case, Mark Rudy, an experienced mediator), both of which factors are present here:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Id.* at 965, quoting *Officers for Justice*, *supra*, at 625.

The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and has never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, *supra*, at 965 (citations omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* at 965 (citations omitted). *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); 2 *Newberg on Class Actions* §11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) §30.42). The proposed settlement here is the product of arm's-length negotiations.

### b. The Balancing of the Factors – The $2,000,000 Gross Settlement Reflects a Reasonable and Valuable Compromise of the Complex Claims Involved that Takes Into Account their Strength and Risks of Protracted Litigation and Failing on the Merits

The factors most commonly considered at preliminary approval include: "the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement."

The factors here, in their respective levels of applicability, favor approval of the settlement. Plaintiff submits and Defendant disputes that this case was factually and legally strong. Turley Decl. ¶ 39. This matter was settled only after substantial discovery, which included multiple rounds of written discovery that resulted in thousands of pages of documents, two Rule 30(b)(6) depositions, and the deposition of Thompson. *Id.* Plaintiff's counsel also conducted numerous interviews of class members. *Id.* Thus, at the point the settlement was initially agreed to, no one was in a better position than Counsel for Plaintiff to understand the strengths and potential

1    limitations of Plaintiff's case and thus evaluate the reasonableness of the amount offered

2    in settlement. *Id.*

3         The failure to provide compliant meal and rest periods under California law and

4    the failure to pay wages under California and Federal law are the predominant claims

5    in the lawsuit. Turley Decl. ¶ 40. The claims for the failure to itemize wage statements

6    and pay all wages timely upon termination derive from and are dependent on the wage

7    claims. *Id.*

8         Under California law, employers must provide non-exempt employees like the

9    driver class involved here with duty-free 30-minute meal periods before the end of the

10   fifth and tenth hours of work and 10-minute rest periods every four hours or major

11   fraction thereof. Plaintiff's theory of liability for both of these claims is that meal and

12   rest periods Defendant provided were not duty-free, because, (1) Defendant encouraged

13   drivers to work through meal periods by holding them to a standard of working with a

14   sense of urgency, and (2) Defendant restricted drivers from leaving the trucks

15   unattended in certain environments during meal and rest periods. Turley Decl. ¶ 41.

16        Under the first theory, Plaintiff claims that, under Defendant's uniform policy of

17   requiring drivers to work with a sense of urgency, they cannot complete shifts and take

18   meal and rest breaks; they have to work through them. Turley Decl. ¶ 42. Under the

19   second theory, Plaintiff claims that, because drivers are restricted in where they can take

20   meal and rest breaks and leave trucks unattended, i.e., only in safe areas or the Costco

21   distribution center or store, they remain under the Defendant's control and thus not duty

22   free. See *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal.App.968, 971 (1995) ("When an

23   employer directs, commands or restrains an employee from leaving the work place

24   during his or her lunch hour and thus prevents the employee from using the time

25   effectively for his or her own purposes, that employee remains subject to the employer's

26   control [and] that employee must be paid."). Turley Decl. ¶ 43.

27

28

1   Costco defends these claims on two fronts. One, it has records that drivers took
2   meal and rest breaks. Two, Costco argues Plaintiff's second theory that drivers are
3   constrained to stay with the truck does not amount to a command or a restraint discussed
4   in *Bono Enterprises, Inc.,* where employees were restrained from leaving the
5   workplace. Costco argues it does not tell drivers they have to stay to one area, i.e., the
6   vicinity of their truck, during meal and rest periods. Rather, Costco argues that drivers
7   can take their meal and rest periods at a multitude of locations and leave their truck
8   unattended and only have to stay with trucks if drivers decide for themselves to stop for
9   a lunch in an obviously unsafe location.

10   Plaintiff's unpaid wages claim under state and FLSA law are based on the same
11   two theories as outlined above. Turley Decl. ¶ 44. Namely, Plaintiff's unpaid wage
12   claims argue that, under Defendant's uniformly applicable "sense of urgency" policy
13   and mandate that drivers must stay in the vicinity of the truck in areas Costco deems
14   unsafe, drivers remain under Defendant's control during unpaid meal periods. *Id.*
15   Plaintiff claims, if proven, these facts would give rise to unpaid wage claims under state
16   law and the federal Fair Labor Standards Act ("FLSA"). *Id.*

17   As Plaintiff's claims for unpaid wages during meal periods are based on the same
18   facts and theories as the meal and rest claims – i.e., that drivers are not relieved of duty
19   during meal and rest periods – Costco's defenses to these claims are similar. That is,
20   Costco argues that it has time records showing drivers were clocked out for meal periods
21   they are claiming here they worked through, and Costco does not tell drivers they have
22   to take meal periods in a single area. Defendant also argues that, to the extent California
23   law as it relates to compensable hours worked is different than in the FLSA, Plaintiff's
24   claims for unpaid wages under California law would be preempted under the Federal
25   Aviation Administration Authorization Act ("FAAAA") as a law that would
26
27
28

1  prohibitively constitute one that affects a motor carrier's "price, route, or service… with

2  respect to the transportation of property."[4]

3        Thus, the success of Plaintiff's case largely hinges on whether he is successful in

4  proving, under Costco's uniform policies, he and the drivers remained under Costco's

5  control and were thus not provided duty-free meal and rest periods and were on-duty

6  during unpaid meal periods.

7        If Plaintiff's theory of liability is correct, Defendant would be liable for the Labor

8  Code Section 226.7 premium for every meal period eligible shift and an additional 226.7

9  premium for every rest period eligible shift. Turley Decl. ¶ 45. Based on data provided,

10  Plaintiff was able to estimate that the total relevant shifts during the class period were

11  362,913. *Id.* Thus, multiplying each of those shifts times Plaintiff's calculation of the

12  average hourly rate of $22.78, Plaintiff estimated potential exposure for California

13  Labor Code Section 226.7 Premiums for meal and rest periods as follows:

14        Meal period:          362,913 shifts x 22.78/hour - $11,937 previously paid

15                             in meal period premiums = $8,255,221

16        Rest period:          362,913 shifts x $22.78/hour = $8,267,158

17        Total meal and rest period potential exposure: $16,522,379. *Id.*

18        If Plaintiff prevailed on his theory under California law that he was owed wages

19  during the time that he had 30-minutes deducted for unpaid meal periods, he estimates

20  – and defendant disputes – Costco's exposure for unpaid wages as:

21        362,913 shifts x $22.78/hour x .5 hours = $4,133,579. Turley Decl. ¶ 46.

22        If Defendant was successful in its FAAAA preemption defense, Plaintiff and the

23  class would take nothing under California for unpaid wages, and would be left with

---

[4] Unlike California law where employer control is the sole focus on whether time is compensable, compensable hours worked under the FLSA requires that the time being claimed are integral and indispensable to a principal activity which workers are employed. *See Bamonte v. City of Mesa* (9th Cir. 2010) 598 F.3d 1217, 1222-1223; see also *Espinoza v. County of Fresno* (E.D. Cal. 2011) 2011 U.S. Dist. LEXIS 85401, *8. Thus, under Costco's FAAAA preemption argument, Defendant argues that Plaintiff's state wage claims are preempted and the only potential remedy for unpaid wages lies in the FLSA, which has a higher burden of proof than California.

establishing a right to recovery under the FLSA, which requires a higher standard of proof and measures the recovery of unpaid wages at the applicable minimum rate. Thus, under the FLSA, Plaintiff estimates – and Defendant disputes – Costco's potential exposure for wage claims under the FLSA to be

362,913 x $7.25/hour x .5 hours = $1,315,559. Turley Decl. ¶ 47.

If Plaintiff were successful in establishing Defendant's policies rendered him and the class of drivers under Costco's compensable control and showed that Defendant acted willfully, he would be entitled to liquidated, or double, damages. Thus, if he made this higher threshold of proof, the damages would be $2,631,118. Turley Decl. ¶ 48.

**c.   Range of Exposure**

If Plaintiff were successful in establishing wage claims under California law, the potential exposure to Defendant for meal and rest period violations and unpaid wages could be:

| | |
|---|---|
| Meal Periods | $8,255,221 |
| Rest Periods | $8,267,158 |
| Unpaid Wages | $4,133,579 |
| | $20,655,958 |

With the Waiting Time Penalties for failing to pay any owed wages at the time of termination, which Plaintiff estimated – and Defendant disputes – to be approximately $672,465, the total exposure could be $20,655,958. Turley Decl. ¶ 49.

Alternatively, if Defendant were successful in establishing its preemption defense to Plaintiff's state wage claims, Plaintiff estimates – and Defendant disputes – that the exposure could be:

| | |
|---|---|
| Meal Periods | $8,255,221 |
| Rest Periods | $8,267,158 |
| Unpaid FLSA Wages: | $1,315,559 (2,631,118 if liquidated damages shown). |

Adding to this total the exposure Plaintiff estimates – and Defendant disputes – for Waiting Time Exposure ($672,465), Defendant's total exposure under this damage model could be $19,555,962. Turley Decl. ¶ 50.

### d.   Reasonable Discount in Light of Substantial Defenses That, If Proven, Would Mean Plaintiff and the Class Would Take Nothing

Taking into account Defendant's substantial defenses that it did not place drivers under its control in the sense that California deems to violate meal and rest periods, i.e., confining them to one place for meal and rest periods, as well as its argument based on *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, that it provided enough relief of control that would suffice for the trucking industry; Plaintiff had to significantly compromise his evaluation of the meal and rest period claims. For similar reasons, Plaintiff had to significantly reduce his evaluation of the unpaid wage claims under California law. That is, Plaintiff would have to prevail over Costco's defense that the restriction Plaintiff claims drivers are under during unpaid lunches is not tantamount to one in which an employer mandates meal periods be taken within the confines of a certain location.

Even further discount had to be placed on the FLSA Claims. To recover wages under the FLSA, Plaintiff would have to show that he and the drivers were under the control of Costco during unpaid meal periods and could not use the time as he and other drivers pleased. Unlike his wage claims under California law, Plaintiff would also have to show that the restriction he and the drivers were under was one that was indispensable to a principal activity of a truck driver. Under the FLSA standard and burden of proving hours worked, the trouble would be in showing that Plaintiff cannot prove he is owed wages simply by showing that, as under California, he and the drivers were owed wages for being limited in where they could take their lunch. Under the FLSA an additional showing would have to be made that having to be confined to the vicinity of the truck, as Plaintiff claimed, was an integral and indispensable to a principal activity which workers are employed. *See Bamonte v. City of Mesa* (9th Cir. 2010) 598 F.3d 1217,

1222-1223; see also *Espinoza v. County of Fresno* (E.D. Cal. 2011) 2011 U.S. Dist. LEXIS 85401, *8. It would be more difficult to prove the time compensable under the FLSA than under California law that staying near the truck during meal and rest periods was integral and indispensable to the principal activity of driving, loading, and unloading freight.

Pursuant to the estimate of potential exposure scenarios that Plaintiff analyzed, the $2,000,000 Gross Settlement Amount reflects approximately 10% of the potential exposure. In light of the significant hurdles Costco's defenses posed, as well as the risk of protracted litigation as compared to settling claims for valuable sums certain at this pre-certification stage, this amount is within the ballpark of reasonableness.[5] Turley Dec. ¶ 51.

Based on the foregoing, Plaintiff and his counsel have determined that the settlement set forth in the Agreement is a fair, adequate and reasonable settlement, and is in the best interests of the Settlement Class. Turley Dec. ¶ 52. Defendant has vigorously defended this litigation, and, absent settlement, will continue to do so. Defendant has, therefore, agreed to settle in the manner and upon the terms set forth in the Agreement, to put to rest the claims set forth in the Class Action.

## V. NATURE AND METHOD OF CLASS NOTICE

As for the content of the notice, Rule 23(c)(2) requires that the notice inform prospective class members of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule23(c)(3) generally requires the same concepts. "Notice is satisfactory if it

---

[5] Courts in the Ninth Circuit have observed that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery." *Telecomm. Corp. v. DirectV* (C.D. Cal. 2004) 221 F.R.D. 523, 527.

1  generally describes the terms of the settlement in sufficient detail to alert those with

2  adverse viewpoints to investigate and to come forward and be heard." Newberg, 2

3  *Newberg on Class Actions* §8.32 at 8-103.

4         In addition, in an FLSA action, "the court must provide potential plaintiffs

5  'accurate and timely notice concerning the pendency of the collective action, so that

6  they can make informed decisions about whether or not to participate. In hybrid type

7  situations, where the settlement involves class and FLSA collective claims, courts

8  require the notice to explain: "(1) the hybrid nature of th[e] action; and (2) the claims

9  involved in th[e] action; (3) the options that are available to the California Class

10  members in connection with the settlement, including how to participate or not

11  participate in the Rule 23 class action and the FLSA collection action aspects of the

12  settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-

13  out of the Rule 23 class action, or doing nothing." *Pierce v. Rosetta Stone, Ltd.* (N.D.

14  Cal. 2013) 2013 WL 1878918, *4.

15         The proposed notice here, which is attached to the Settlement Agreement as

16  **Exhibit A**, meets all of these requirements. The claims in the lawsuit and their hybrid

17  nature are explained in Section 3 of the Notice. The ability to participate in and how to

18  participate in either, both, or neither of the FLSA settlement and the Class settlement

19  are described in Section 3, as well as in Sections 8, 9-11. The Notice explains how to

20  object to either or both the FLSA settlement or Class settlement and the different

21  consequences that doing nothing would have on FLSA and California rights. (See

22  Sections 4 & 8). That is, the Notice explains that doing nothing means they are

23  participating in and will be bound by the class settlement, whereas doing nothing as to

24  the FLSA side of things means they will not be participating in or bound by the FLSA

25  release. Finally, the class notice advises them of what each class member can expect to

26  receive under the auspices of the class settlement and explains what collective members

27  can expect to receive under the FLSA collective claims and advises them that they can

28

request and will receive from Class/Collective Counsel all settlement documents free of charge. (Section 6 &13). Thus, it is requested the Court order the Notice adequately notifies the Class and FLSA Collective Members of the proposed settlement.

## VI.   SETTLEMENT ADMINISTRATION

Subject to Court approval, the Parties have designated CPT Group, Inc. as the Settlement Administrator. Within 15 calendar days after Preliminary Approval Defendant shall provide the Settlement Administrator with the "Class List Data": a spreadsheet containing the names, most recent known mailing address, and Social Security numbers of all Stipulated Class Members, to the extent that Defendant has such information in its records. Turley Decl. ¶ 53. CPT will perform a search based on the National Change of Address Database, or any other similar service available, to correct for any identifiable address changes. *Id.*

Within 20 calendar days after Preliminary Approval, the Settlement Administrator shall send Stipulated Class Members a Class Notice of the proposed settlement and of the opportunity to opt out or object. Turley Decl. ¶ 54. The Class Notice will be sent by first-class regular U.S. Mail to each Stipulated Class Member's last known address. *Id.* The Class Notice will be in a form substantially identical to Exhibit A to the Settlement Agreement, with such modifications as the Court may order. *Id.* The purpose of the Class Notice is to inform Stipulated Class Members of the nature of the Lawsuit, summarize the proposed settlement, define the Stipulated Class, describe how to submit Requests for Exclusion, describe how to submit Objections, indicate how to determine the date for the hearing on Final Approval, and describe how Individual Settlement Amounts are determined. *Id.*

After mailing, if a new address is obtained, then CPT shall promptly forward the original Class Notice to the updated address via first-class U.S. Mail, indicating on the original Class Notice the date of such re-mailing. Turley Decl. ¶ 55 The Parties agree

1  to cooperate with the Settlement Administrator to locate a more recent address for

2  Stipulated Class Members, where necessary. *Id.*

3       Stipulated Class Members who wish to opt out of the settlement will have 45

4  days from the mailing of the Class Notice to postmark a Request for Exclusion.

5       Stipulated Class Members who wish to object to the Settlement similarly will

6  have 45 days to file with the Court and serve an Objection to the Agreement.

7       Any Settlement Class Member who disputes the amount of the assigned work

8  shifts may so notify CPT and produce substantiating evidence to question the assigned

9  amount. Turley Decl. ¶ 56. Where the subject matter of the dispute concerns areas

10  covered by Defendant's records, then, absent evidence rebutting the records, the records

11  will be presumed determinative. *Id.* The Parties will evaluate the evidence submitted by

12  the Settlement Class Member and, in consultation with CPT, will make the final

13  decision regarding the dispute. *Id.*

14  **VII.    CONCLUSION**

15       The Parties have reached this settlement following extensive arm's-length

16  negotiations. Plaintiff respectfully requests that the Court grant preliminary approval of

17  the proposed settlement, order the class and FLSA collective conditionally certified and

18  enter the proposed Preliminary Approval Order submitted herewith, and for such

19  additional relief as this Court should deem proper.

20  Dated: March 30, 2017                    **THE TURLEY & MARA LAW FIRM, APLC**

21

22                                           By: /s/ *David Mara*
                                             _____
                                             William Turley, Esq.
23                                           David Mara, Esq.
                                             Jill Vecchi, Esq.
24                                           Attorneys for Plaintiff
                                             Douglas Thompson

25

26

27

28