UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS THOMPSON on behalf of himself, others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Case No.: 14-cv-2778-CAB-WVG<br><br>**ORDER GRANTING SECOND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Doc. No. 67] |

This matter is before the Court on the Plaintiff's Unopposed Second Renewed Motion for Preliminary Approval of Class Action Settlement. For the reasons set forth below, the motion is **GRANTED**.

**I.     Background[1]**

Defendant Costco Wholesale Corporation ("Costco"), employs truck drivers who operate trucks within San Diego County and elsewhere in California. Plaintiff Douglas Thompson is a former truck driver for Defendant. This lawsuit arises out of Costco's alleged failure to properly provide meal and rest periods and to properly compensate its truck drivers.

On October 17, 2014, Thompson filed a class action complaint in the San Diego County Superior Court asserting eleven claims under California's labor and unfair

---

[1] Most of the first three sections of this order, as well as some of the legal standards throughout, are identical to the Court's prior order denying preliminary approval. [Doc. No. 60.] They are repeated here for ease of reference.

competition laws. Costco removed the lawsuit to this Court on November 20, 2014, and then filed a motion to dismiss. Instead of opposing the motion, Thompson filed the first amended complaint ("FAC") on January 12, 2015. The FAC narrowed the issues, eliminated several claims, and ultimately alleged seven claims under California's labor and unfair competition laws. [Doc. No. 14.] On February 10, 2015, Thompson filed a Second Amended Complaint ("SAC") that further narrowed the focus of the complaint, including limiting the class to California truck drivers. [Doc. No. 19.] The SAC asserted seven claims under California law: (1) Wage Theft/Time-Shaving; (2) Failure to pay overtime; (3) Failure to provide meal periods; (4) Failure to provide rest periods; (5) Failure to pay compensation for all time worked; (6) Waiting time penalties; and (7) Violation of California's unfair competition law, California Business and Professions Code Section 17200, *et seq*.

After conducting some discovery, the parties participated in a private mediation on March 11, 2016. The mediation concluded with a mediator's proposal, and after additional discussions, the proposal was revised and resulted in a Memorandum of Understanding ("MOU"). The MOU led to a settlement agreement dated June 27, 2016 (the "Settlement Agreement"). [Doc. No. 59-2.] In addition to the terms listed below, the Settlement Agreement required Plaintiff to file a Third Amended Complaint ("TAC") adding claims for unpaid wages and liquidated damages under the Fair Labor Standards Act ("FLSA"), a claim for penalties under California Labor Code section 226, and a claim under the Private Attorney General Act of 2004 ("PAGA").

On September 27, 2016, Plaintiff's counsel filed a joint motion seeking leave to file a third amended complaint ("TAC"). [Doc. No. 55.] The Court granted the motion, and Plaintiff filed the TAC on October 3, 2016. [Doc. No. 57.] The TAC added an FLSA minimum wage claim, a PAGA claim, and a wage statement penalty claim.

## II.   First Settlement Agreement Terms

On December 2, 2016, Plaintiff filed a motion for preliminary approval of a June 27, 2016 Settlement Agreement. The motion defined one class as follows:

> [A]ll current and former fleet drivers employed at a Costco business center or depot in California from October 17, 2010 through October 4, 2016 (the date 85 days after Plaintiff signed the Agreement).

[Doc. No. 59 at 4-5]

The Settlement Agreement required Costco to pay a gross settlement amount of $2,000,000, allocated as follows: $1,308,000 to the settlement members for their claims; $5,000 as an incentive award for Thompson; $660,000 to Plaintiff's counsel; $10,000 to settlement of PAGA claims; and $17,000 to the CPT Group, Inc., the Class Administrator, for administration costs. [Doc. No. 59-2 at 6-8.] The Agreement estimated 882 class members, meaning that each class member will receive an average of $1,483 from the gross settlement amount based on the agreed upon allocation. In exchange for these payments, the settlement agreement defined the Released Claims as including:

> any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney's fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, that were alleged or that reasonably could have been alleged based on the facts alleged in the Lawsuit, as amended, including, but not limited to, any claims under federal law and state law, claims for unpaid overtime, claims for missed meal or rest breaks, claims for meal or rest break penalties, liquidated damages, unlawful deductions from wages, conversion of wages, record-keeping violations, wage-statement penalties, and "waiting time" penalties, claims for unpaid wages and liquidated damages under the Fair Labor Standards Act, claims under the applicable Wage Order and Labor Code sections 201, 202, 203, 218, 218.5, 226, 226.3, 226.7, 510, 512, 558, 1194, 1194.2, 1197, as well as claims under Business and Professions Code section 17200 et seq., and Labor Code section 2698 et seq. based on alleged violations of these Labor Code provisions. The Agreement is conditioned upon the release by all Settlement Class Members of any claim under Labor Code section 2699, as to the released claims set forth above, and upon covenants by all members that they will not participate in any proceeding seeking penalties under Section 2699, as to the released claims set forth above. Defendant shall not owe, beyond the amount of Gross Settlement Fund, any further monies to the Settlement Class or to the State of California based upon the claims made in the Lawsuit during the Settlement Period. This release is effective for the Settlement Period.

[Doc. No. 59-1 at 9.]

The Agreement then reiterated that it released any FLSA claims by Settlement Class Members who cash, deposit, or endorse settlement checks:

> The Parties intend that this agreement shall bind all Settlement Class Members. This Agreement shall constitute, and may be pleaded as, a complete and total defense to any such dispute or claim if raised in the future. The procedure adopted under the Agreement will operate as a release of any FLSA claim by those Settlement Class Members who cash, deposit, or endorse settlement checks.

[Doc. No. 59-1 at 10.]

### III.    Denial of Preliminary Approval of First and Second Settlements

Although the Court held that all of the requirements for certification of a Rule 23 class and FLSA collective for settlement purposes, except for the adequacy of Plaintiff's counsel, had been satisfied, it denied Plaintiff's motion for preliminary approval of the first settlement.  [Doc. No. 60.]  As explained in the order, the reasons for denying the motion included:

1. The motion did not explicitly request certification of an FLSA collective action;
2. The settlement required Rule 23 class members to release FLSA claims to benefit from the settlement of the state law claims;
3. The settlement called for a release of the class' FLSA claims in exchange for no consideration;
4. The motion did not provide any evidence or information that would allow the Court to evaluate the reasonableness of the settlement amount itself.
5. The notice to the class did not adequately explain the differences between the Rule 23 class action and the FLSA collective action that were subject to the proposed settlement;

6. The proposed notice did not clearly identify the Class Administrator, provide its telephone number, or provide an address where absent class members can send their opt-in and opt-out forms;

7. The proposed notice unduly burdened absent class members who wanted to obtain a copy of the settlement agreement by requiring them to obtain it from the Court; and

8. The proposed notice did not explicitly notify class members that they have the right to object to the specific attorney's fees and costs and incentive award sought.

The Court then required each of these deficiencies to be remedied in any renewed motion for preliminary approval of a settlement. On March 30, 2017, Plaintiff filed a renewed motion for preliminary approval of a new settlement agreement signed on or about March 23, 2017 that, according to class counsel, fixed these deficiencies. On April 26, 2017, the Court denied Plaintiff's renewed motion, noting that although the revised settlement agreement corrected some of the deficiencies noted by the Court, the release language remained in adequate.

On May 10, 2017, Plaintiff filed what is now his third motion for preliminary approval of a settlement. According to the motion, the current version of the settlement agreement, signed on or about May 8, 2017, remedies all of the deficiencies identified by the Court in its prior orders.

**IV. Legal Standards For Approval of a Settlement of a Hybrid FLSA Collective/Rule 23 Class Action**

A Rule 23 class action may not be settled without approval of the court. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998) (citing Fed. R. Civ. P. 23(e)). "The primary concern . . . is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). "Approval of a class action settlement requires a two-step process—

a preliminary approval followed by a later final approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). The instant motion involves the first step of the process.

Meanwhile, FLSA claims brought on behalf of similarly situated individuals are frequently referred to as collective actions. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *see also Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000). Similar to Rule 23 class actions, "[s]ettlement of an FLSA claim, including a collective action claim, requires court approval." *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *see also Dunn v. Teachers Ins. & Annuity Assoc. of Am.*, No. 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) ("Most courts hold that an employee's overtime claim under FLSA is non-waivable and, therefore, cannot be settled without supervision of either the Secretary of Labor or a district court.").

However, "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). One of the primary differences is that the "FLSA and Rule 23 provide different means for participating in a class action." *Leuthold*, 224 F.R.D. at 469. Specifically:

> In a class action, once the district court certifies a class under Rule 23, all class members are bound by the judgment unless they opt out of the suit. By contrast, in a collective action each plaintiff must opt into the suit by "giv[ing] his consent in writing." 29 U.S.C. § 216(b). As result, unlike a class action, only those plaintiffs who expressly join the collective action are bound by its results.

*McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). Despite these differences, when considering a motion to approve the settlement of either a Rule 23 class or an FLSA collective action before a class or collective has been certified, the Court must first certify the class or collective for the purpose of the settlement. *See generally Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 602-07 (E.D. Cal. 2015).

## V. Preliminary Certification of Rule 23 Class

In its prior order, the Court found that all the requirements for class certification for the purposes of settlement had been satisfied, with the exception of the adequacy requirement. Fed. R. Civ. P. 23(a)(2). That holding applies here as well, leaving only the adequacy requirement undetermined. The adequacy requirement asks whether the representative "will fairly and adequately protect the interest of the class." *Id.* "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

In its first order denying preliminary approval, the Court found that:

> Plaintiff's counsel appears to have extensive experience in litigating wage and hour class actions. [See Doc. No. 59-1 at 3.] Further, there is no obvious conflict between Thompson's interests and those of the class members. However, the terms of the settlement, including the release of FLSA claims despite no such claims having been pled at the time of settlement, reflects that Thompson and class counsel may have favored their own interests at the expense of the class members to achieve the settlement. Moreover, the complete failure to recognize this action as hybrid action raises questions as to counsel's understanding of the procedural rules applicable to the FLSA claims it proposes that the class release without compensation. Notwithstanding the foregoing, because the Court is denying the instant motion on other grounds, it need not reach a conclusion at this stage as to whether counsel adequately represents the class.

Although the revised settlement remedies the deficiencies enumerated by the Court, it does little to satisfy the Court that class counsel have prosecuted the action vigorously on behalf of the class.

Class counsel's actions and various inconsistent statements to the Court have undermined their credibility making it difficult, if not impossible, for the Court to evaluate the proposed settlement. Specifically:

- On December 2, 2016, proposed class counsel asked the Court to approve a settlement that required class members to release FLSA claims in exchange for *no compensation*. Proposed counsel William Turley filed a declaration stating: "Plaintiff has analyzed the potential value of the FLSA claims and has concluded that they are worth very little to nothing such that the release of said claims should not prejudice Settlement Class Members." [Doc. No. 59-1 at 11, ¶ 36.]

- The original settlement envisioned a fee award of $660,000, or approximately one-third of the total settlement amount to be paid by Costco.

- On March 3, 2017, David Mara, who is Mr. Turley's partner, in response to the Court's order to show cause as to why sanctions should not issue for filing the TAC adding FLSA claims when counsel concluded they were worth little to nothing, walked back (if not directly contradicted) Mr. Turley's statement, asserting that the FLSA claims "had real value" and "absolutely were not meritless."

- In his declarations supporting the second motion for preliminary approval and the instant motion, Mr. Turley states that: (1) "this case was factually and legally strong" [Doc. Nos. 64-1 and 67-1 at 11, ¶ 39]; (2) "Plaintiff's unpaid wages claim under state and FLSA law are based on the same two theories" [*Id.* at 12, ¶ 44]; (3) "Costco's potential exposure for wage claims under the FLSA to be . . . $1,315,559," [*Id.* at 13 ¶ 47]; and (4) if Plaintiff could show that Costco acted willfully, Costco's exposure under the FLSA would be doubled to $2,631,118. [*Id.* ¶ 48.]

- This renewed motion allocates $146,750 to settlement of the FLSA claims while envisioning only $500,000 in attorney's fees.

Based on this timeline of events and statements to the Court, it is hard for the Court not to conclude that with the first settlement, class counsel, who is supposed to be representing absent class members, was putting its own interests first. If the FLSA claims had real value and are worth $146,750 in settlement, Mr. Turley's original declaration that

8

14-cv-2778-CAB-WVG

the claims are worth little to nothing was false. The obvious explanation or motivation for this falsehood is that in the original settlement, instead of obtaining any consideration on behalf of the class for a release of FLSA claims, counsel sought to keep that money itself in the form of an excessive attorney fee request. Only when challenged by the Court did class counsel attempt to obtain any consideration for the class' release of these claims. Even then, counsel did so by simply reallocating some of the exorbitant amount it initially intended to request in fees (an amount the Court was unlikely to approve anyway). Put simply, it is difficult to find that counsel who have engaged in these actions are adequately representing absent class members.

Notwithstanding the foregoing, because the instant motion seeks only preliminary approval of the settlement, the Court is free to revisit this adequacy requirement at the final approval hearing, at which time it will have the benefit of any objections filed by absent class members. Accordingly, giving class counsel every benefit of the doubt at this time, the Court finds that this requirement has been satisfied for the purposes of preliminary approval.

### VI. Review of New Settlement Terms

#### A. Legal Standards

"At the preliminary approval stage, the Court may grant preliminary approval of a settlement if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Sciortino v. PepsiCo, Inc.*, No. 14-CV-00478-EMC, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016) (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011)). "At the preliminary approval stage, a full fairness analysis is unnecessary." *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (internal quotation marks and citation omitted). "Closer scrutiny is reserved for the final approval hearing." *Sciortino*, 2016 WL 3519179, at *4.

Although the Ninth Circuit has not established a standard for district courts to follow when evaluating an FLSA settlement, California district courts frequently apply the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982). *Dunn*, 2016 WL 153266, at *3. Under that standard, the settlement must constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 29 U.S.C. § 216(b); *Lynn's Food Stores*, 679 F.2d at 1355; *see also Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11, 2014) ("A district court may approve an FLSA settlement if the proposed settlement reflects 'a reasonable compromise over [disputed] issues.'") (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

The standard for approving FLSA collective actions may be nominally different from the standard for approving class actions under Federal Rule of Civil Procedure 23, but "many courts begin with the well-established criteria for assessing whether a class action settlement is fair, reasonable and adequate under [Rule] 23(e) and reason by analogy to the FLSA context." *Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-1821-AWI-EPG, 2016 WL 3077710, at *3 (E.D. Cal. Jun. 2, 2016) (internal quotation marks omitted); *see also Otey v. Crowdflower, Inc.*, No. 12-cv5524-JST, 2014 WL 1477630, at *11 (N.D. Cal. Apr. 15, 2014) ("[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a Rule 23 settlement.").[2] Accordingly, if the settlement here warrants approval under Rule 23(e), it is likely to warrant approval under the FLSA as well.

Federal Rule of Civil Procedure 23(e) instructs that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of

---

[2] *But see Selk v. Pioneers Mem. Healthcare Dist.*, 159 F.Supp. 3d 1164, 1173 (S.D. Cal. 2016) (evaluating an FLSA settlement using a totality of the circumstances approach "that replicates the factors relevant to Rule 23 class actions where appropriate, but adjusts or departs from those factors when necessary to account for the labor rights at issue.")

a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id*. at 1026.  This determination requires the Court to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. Further, because the Settlement Agreement here was negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011)). However, "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane*, 696 F.3d at 819.  Ultimately, a "district court's final determination to approve the settlement should be reversed 'only upon a strong showing that the district court's decision was a clear abuse of discretion.'" *Hanlon*, 150 F.3d at 1027 (quoting *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995)).

### B. New Settlement Agreement Terms

The instant motion seeks preliminary certification of the following Rule 23 class: "All current and former fleet drivers employed at a Costco business center or depot in California from October 17, 2010, through October 4, 2016." It also seeks certification of

the following FLSA collective: "All current and former fleet drivers employed at a Costco business center or depot in California from October 17, 2011 through October 4, 2016."

Similar to the first settlement, the new settlement proposes a $2,000,000 gross settlement amount to be paid by Costco. However, the new agreement allocates the fund differently: $5,000 as an incentive award for Thompson; $500,000 to Plaintiff's counsel for fees; $20,000 in reimbursement to Plaintiff's counsel for costs; $10,000 to settlement of PAGA claims; up to $30,000 to the CPT Group, Inc., the Class Administrator, for administration costs; 90% of the remainder after the aforementioned payments as the net Rule 23 class settlement fund (estimated to be $1,320,750); and 10% of the remainder as the net FLSA collective settlement fund (estimated to be $146,750). [Doc. No. 64-1 at 5-7.] Plaintiff's counsel estimates the 882 class members who also opt-in to the FLSA collective will receive an average of $1,664 from the gross settlement amount based on the agreed upon allocation. In sum, the new settlement agreement reduces the proposed allocation to Plaintiff's counsel from $660,000 (or 33% of the total settlement fund—and an amount unlikely to be approved by the Court) to $500,000 (25% of the total settlement fund) and uses the difference to create a settlement fund for the FLSA collective.

### C.  Analysis

The new settlement remedies most of the deficiencies identified in the Court's orders denying the prior two settlement agreements. However, further analysis is required. One of those deficiencies was that counsel had not provided sufficient evidence or information that would allow the Court to evaluate the reasonableness of the settlement. Now that counsel have provided that information, the Court must actually evaluate the reasonableness of the settlement.

"Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] * * * is the need to compare the terms of the compromise with the likely rewards of litigation." *In re TD Ameritrade*

*Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424–25, (1968)). However, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted). Ultimately, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.Cal.2004).

In the motion, class counsel argues that the gross settlement amount reflects approximately 10% of the potential exposure, and that based on Costco's defenses and the hurdles of Plaintiff's case, this settlement is fair, adequate and reasonable. Although this low estimated recovery[3] for the class is not fatal to the settlement, the only information available to the Court that even this estimate is correct is the declaration of Mr. Turley. To accept that the settlement equals an approximate 10% recovery for the class, the Court necessarily must find that Mr. Turley's declaration is credible. Mr. Turley, however, is not a credible witness in light of his previous declaration that the FLSA claims are worth very little to nothing, which was contradicted by a subsequent declaration of his partner, Mr. Mara, and by the new settlement itself. Because the motion does not provide any evidence other than Mr. Turley's declaration to support the reasonableness of the settlement, the Court lacks any credible evidence to support the settlement amount in the context of this case.

Notwithstanding the foregoing, based on the Court's experience with wage and hour class actions, including class actions involving truck drivers asserting claims similar to those at issue in this case, the Court is comfortable *preliminarily* approving the settlement.

---

[3] The net recovery to the class is far less after accounting for attorney's fees and other expenses.

At the final approval hearing, the Court will give careful consideration to any objections from class members (or the lack thereof) when determining whether final approval is warranted.

### VII. Conclusion and Order

In light of the foregoing, it is hereby **ORDERED** as follows:

1. The Court finds on a preliminary basis that the provisions of Joint Stipulation for Class/Collective Action Settlement (hereinafter "Agreement"), filed with the Court as Exhibit 1 to the Declaration of William Turley [Doc. No. 67-1], are fair, just, reasonable, and adequate and, therefore, meets the requirements for preliminary approval.

2. For purposes of this Order, the Court adopts all defined terms as set forth in the Agreement.

3. The Court conditionally certifies, for settlement purposes only, the following stipulated Collective ("Stipulated Collective") described in the Motion for Preliminary Approval: "All current and former fleet drivers employed at a Costco business center or depot in California from October 17, 2011, through October 4, 2016."

4. The Court preliminarily certifies, for settlement purposes only, the following stipulated class ("Stipulated Class") described in the Motion for Preliminary Approval: "All current and former fleet drivers employed at a Costco business center or depot in California from October 17, 2010 through October 4, 2016."

5. The Court preliminarily finds, for settlement purposes only, the requirements of Federal Rule of Civil Procedure 23(a) and Federal Rule of Civil Procedure 23(b)(3) are satisfied.

6. The Court preliminarily finds, for settlement purposes only, the requirements of 29 U.S.C. section 216(b) for conditional certification of an FLSA Collective Action are satisfied.

7. The Court appoints, for settlement purposes only, Douglas Thompson as the Class/Collective Representative.

8. The Court preliminarily appoints, for settlement purposes only, William Turley, David Mara, and Jill Vecchi of The Turley & Mara Law Firm, APLC, as Class/Collective Counsel for the purposes of settlement and the releases and other obligations therein.

9. The Court appoints CPT Group as Class Administrator. The Class Administrator shall disseminate Class Notice, supervise and carry out the settlement administration procedures in the Agreement, and respond to Class member inquiries.

10. The Class/Collective Notice, in the form attached to the Declaration of William Turley as Exhibit A to the Agreement [Doc. 67-1 at 47-56], is approved.

11. The FLSA Collective Claim Form, in the form attached to the Declaration of William Turley as Exhibit B to the Agreement [Doc. 67-1 at 58-59], is approved.

12. The Class Administrator is ordered to mail the Class/Collective Notice and Claim Form to the Stipulated Class and Collective Members as provided in the Agreement. The Court finds that this Notice is the best notice practicable under the circumstances and is in compliance with the requirements of Fed. R. Civ. P. 23 and applicable standards of due process and that, when completed, shall constitute sufficient notice to Stipulated Class/Collective Members of the settlement, the Final Approval Hearing, and the right to be excluded from the settlement.

13. The Court will hold a Final Approval Hearing on **September 1, 2017** at **2:00 p.m.**, in the Courtroom of the Honorable Cathy Ann Bencivengo, United States District Court for the Southern District of California, Courtroom 4C (4th Floor—Schwartz), 221 West Broadway, San Diego, CA 92101, for the following purposes:

   a. Finally determining whether the Class meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and whether the Class should be certified for the purposes of effectuating the Settlement;

   b. Finally determining whether the Collective satisfies the requirements of the FLSA allowing "a private right of action to enforce its provisions "by any one

or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b);

c. Finally determining whether the proposed Settlement of the case on the terms and conditions provided for in the Agreement is fair, reasonable, and adequate and should be approved and ordered by the Court;

d. Considering the application of class counsel for an award of attorneys' fees and costs, as provided for in the Agreement;

e. Considering the application of the named Plaintiffs for a class representative incentive award, as provided for in the Agreement;

f. considering whether the release by the Class and Collective Members of the Released Claims as set forth in the Agreement should be provided; and

g. Ruling upon such other matters as the Court may deem just and appropriate.

14. The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to the Class Members.

15. Class counsel shall file a motion for final approval of the Settlement no later than **August 4, 2017**. Any request by class counsel for an award of attorneys' fees or reimbursement of expenses shall be filed concurrently, and that request shall be accompanied by supporting evidence.

16. Each Stipulated Class/Collective Member will have forty-five (45) days after the date on which the Class Administrator mails the Class/Collective Notice to object to the Settlement by serving on the Settlement Administrator, Class/Collective Counsel, and Counsel for Defendant, and filing with the Court, by the forty-five (45) day deadline, a written objection to the Settlement.

17. Each Stipulated Class Member who wishes to be excluded from the settlement shall sign and mail or fax a written opt out to the Class Administrator. The written request must: (a) state the Class Member's name, address, telephone number, and Social Security Number; (b) state the Class Member's intention to opt out of the Settlement; (c) be addressed to the Class Administrator; (d) be signed by the Class Member or their lawful

representative; and (e) be postmarked to the Settlement Administrator no later than 45 days after notice packet is mailed.

18.     Each Stipulated FLSA Collective Member who wishes to participate in the settlement of the FLSA Collective claims, shall mail a properly executed Claim Form to the Settlement Administrator that is postmarked no later than 45 days after the notice packet is mailed.

19.     If the Agreement is not finally approved by the Court or for any reason is terminated or otherwise does not become effective, the following will occur:  (1) this Preliminary Approval Order, and all of its provisions, will be automatically vacated; (2) the case will proceed as if no settlement has been attempted and notice will be provided to the putative class/collective members that the settlement will not proceed and that, as a result, no payments will be made; (3) no party shall be deemed to have waived any claims, objections, rights, or defenses, or legal arguments or positions, including, but not limited to, objections to class certification and claims and defenses on the merits; (4) no term or draft of the Agreement, or any aspect of the Parties' settlement discussions, including related documentation, will have any effect or be admissible into evidence for any purpose in the case or in any other proceeding; and (5) Costco shall have no obligation to pay all or any part of the settlement.

20.     During the Court's consideration of the settlement and pending further order of the Court, all proceedings in this case, other than proceedings necessary to carry out the terms and provisions of the Agreement and this order, or as otherwise directed by the Court, are hereby stayed and suspended.

21.     The parties may further modify the Agreement prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the Settlement provided thereunder.  The Court may approve the Settlement Agreement with such modifications as may be agreed to by the parties, if appropriate, without further notice to the Settlement Class.

22. To facilitate administration of the settlement pending final approval, the Court hereby enjoins Stipulated Class Members from prosecuting any claims or administrative proceedings (including filing any claims with the California Division of Labor Standards Enforcement) regarding the claims released by the Settlement unless and until the Stipulated Class Members files a valid request for exclusion.

23. On or before **June 5, 2017**, defense counsel shall file a sworn affidavit confirming that the requirements of 28 U.S.C. § 1715 have been satisfied, or in the alternative, a notice explaining why such requirements do not apply to this settlement.

24. No later than fourteen days prior to the Final Approval Hearing date, the Class Administrator shall file an affidavit and serve a copy on class counsel and defense counsel, attesting that notice was disseminated as required by the terms of the settlement agreement or as ordered by the Court. This affidavit shall also inform the Court of any requests for exclusion from the Class, the names of employees who opted in to the FLSA collective, and objections or other reactions from Class/Collective Members received by the Class Administrator.

25. The Parties are further ordered to carry out the Settlement Agreement in the manner provided in the Settlement Agreement.

It is **SO ORDERED**.

Dated: May 11, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge