1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  DOUGLAS THOMPSON on behalf of himself, others similarly situated, and the general public,<br><br>12<br>13                                    Plaintiff,<br>14  v.<br>15  COSTCO WHOLESALE<br>16  CORPORATION and DOES 1 through 100,<br>17<br>18                                    Defendant. | Case No.:  14-CV-02778-CAB-(WVG)<br><br>**FINAL APPROVAL OF CLASS SETTLEMENT**<br>**[Doc. No. 70]** |

19
20          This matter is before the Court on Plaintiff's unopposed motion for Final Approval
21  of Class/Collective Action Settlement; Award of Attorneys' Fees, Costs, Class/Collective
22  Representative Service Award, Claims Administration Expenses, LWDA Payment; and
23  Entering Judgment.  [Doc. No. 70.]  The Court held a hearing on this motion on September
24  1, 2017.  As discussed below, the motion for final approval is granted, the motion for
25  attorneys' fees, costs and class representative enhancement awards and LWDA payment is
26  granted in part, and judgment is entered.
27
28

1

## I.   Background

Plaintiff, a former truck driver for Defendant Costco ("Costco"), initiated this class action lawsuit in the Superior Court of San Diego County on October 17, 2014, asserting eleven claims under California's Labor Code and unfair competition laws.  Plaintiff alleged that Costco failed to provide meal and rest periods and to properly compensate its truck drivers.  Defendant removed the case to this Court on November 20, 2014.

On June 27, 2016, the parties entered in a settlement agreement.  [Doc. No. 59-2.] Following the terms of the Settlement Agreement, Plaintiff's counsel sought and was granted leave to file a third amended complaint ("TAC") to added claims for unpaid wages and liquidated damages under the Fair Labor Standards Act ("FLSA"), a claim for penalties under California Labor Code section 226, and a claim under the Private Attorney General Act of 2004 ("PAGA").  [Doc. Nos. 55, 57.]

On December 2, 2016, Plaintiff filed a motion for preliminary approval of June 27, 2016 settlement agreement.  [Doc. No. 59.]  On February 22, 2017, the Court issued an order that held that all of the requirements for certification of a Rule 23 class and FLSA collective for settlement purposes, except for the adequacy of Plaintiff's counsel, had been satisfied but denied Plaintiff's motion for preliminary approve of the first settlement because of a number of deficiencies.[1]  [Doc. No. 60.]  The Court required that each of the deficiencies be remedied in any renewed motion for preliminary approval.

---

[1] As explained in the order, the reason for denying the motion included: (1) the motion did not explicitly request certification of an FLSA collective action; (2) the settlement required Rule 23 class members to release FLSA claims to benefit from the settlement of the state law claims; (3) the settlement called for a release of the class' FLSA claims in exchange for no consideration; (4) the motion did not provide any evidence or information that would allow the Court to evaluate the reasonableness of the settlement amount itself; (5) the notice to the class did not adequately explain the differences between the Rule 23 class action and the FLSA collective action that were subject to the proposed settlement; (6) the proposed notice did not clearly identify the Class Administrator, provide its telephone number, or provide an address where absent class members could send their opt –in and opt-out forms; (7) the proposed notice unduly burdened absent class members who wanted to obtain a copy of the settlement agreement by requiring them to obtain it from the Court; and (8) the proposed notice did not explicitly notify class members that they have the right to object to the specific attorney's fees and costs and incentive award sought.  [Doc. No. 60.]

On March 30, 2017, Plaintiff filed a renewed motion for preliminary approval of a new settlement agreement signed on or about March 23, 2017, that according to Class/Collective Counsel ("Counsel"), fixed the deficiencies noted by the Court.  [Doc. No. 64.]  On April 26, 2017, the Court denied the renewed motion, noting that although the revised settlement agreement corrected some of the deficiencies reported by the Court, the release language remained inadequate.  [Doc. No. 66.]

On May 10, 2017, Plaintiff filed his third motion for preliminary approval of settlement.  [Doc. No. 67.]  The Court found that the settlement agreement signed on or about May 8, 2017, remedied all of the deficiencies it had identified in previous orders and therefore granted preliminary approval.  [Doc. No. 68.]

The agreement provides for settlement of claims for meal periods under the FLSA, California Labor Code, the Unfair Competition Law (UCL) and derivative claims for wage statement and waiting time penalties.  It authorizes: (1) a gross settlement fund in the amount of $2,000,000; (2) a class representative award of $5,000 to Thompson; (3) $10,000 to settlement of PAGA claims; (4) $21,000 in class administrator fees; (5) $500,000 to Counsel for fees and $20,000 in costs; 90% of the remainder, after the aforementioned payments, as the net Rule 23 class settlement fund (estimated to be $1,320,750); and 10% of the remainder as the net FLSA collective settlement fund (estimated to be $146,750). [Doc. No. 64-1 at 5-7.]  Additionally, Counsel estimates that 924 participating class members will receive an average payment of $1,397.73, and the 459 class members who have opted-in to the FLSA collective will receive a settlement payment of $312.64 based on the agreed upon allocation.

The settlement defines the Rule 23 class as "all current and former fleet drivers employed at a Costco business center or depot in California at any time during the period of October 17, 2010, through October 4, 2016.  The settlement also seeks certification of the FLSA collective comprised of "all current and former drivers employed at a Costco business center or depot in California at any time during the period of October 17, 2011 and October 4, 2016.  [Doc. No.  373 at 4.]

The preliminary approval order set a final approval hearing for September 1, 2017. The final approval hearing took place as scheduled.  Both parties were represented by counsel.  No class members filed objections to the settlement, and no class members attended the hearing.  However, one class member requested exclusion from the settlement.

## II.      Final Approval of Settlement

### A.  Certification of the Settlement Classes.

The settlement here envisions certification of the Rule 23 class as "all current and former fleet drivers employed at a Costco business center or depot in California at any time during the period of October 17, 2010, through October 4, 2016."  [Doc. No. 70-8 at 5.] The settlement also seeks certification of the FLSA collective comprised of "all current and former drivers employed at a Costco business center or depot in California at any time during the period of October 17, 2011 and October 4, 2016."  [*Id.* at 6.]

When considering a motion for approval of either a Rule 23 class action or an FLSA collective action the Court must perform the threshold task of certifying the class or collective.  *See generally Millan v. Cascade Water Servs. Inc.,* 310 F.R.D. 593, 602-607 (E.D. Cal. 2015).  The Court must "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Additionally, the Court must determine whether class counsel is adequate and whether "the action is maintainable under Rule 23(b)(1), (2), or (3)."  *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000) (quoting *Amchen Prod. v. Windsor,* 521 U.S. 591, 614 (1997)).  However, "a Court has a considerably less stringent obligation to ensure fairness of the settlement in an FLSA collective action than a Rule 23 action because parties who do not opt in are not bound the settlement."  *Millan*, 310 F.R.D. at 607 (internal quotation marks omitted).

### 1. Numerosity

This requirement is satisfied if the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class greater than forty members often satisfies this requirement. . . ." *Waller v. Hewlett-Packard Co.,* 295 F.R.D. 472, 482 (S.D. Cal. 2013) (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008)). Here, notice packets were mailed to 925 potential class members. Joinder of all these potential plaintiffs would be impracticable. Accordingly, this requirement has been met.

### 2. Commonality

This requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy this commonality requirement, plaintiffs need only point to a single issue common to the class." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009). Here, the commonality requirement is satisfied because all of the class claims involve common questions of law and fact surrounding Defendant's meal and rest period policies, payment of overtime, and payment for all time worked.

### 3. Typicality

This requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations and citation omitted). Here, the typicality requirement is satisfied because the claims of named Plaintiff and the class are the same. The wrongful conduct alleged in the complaint is not unique to the class representative, and the damages to the class members, if any, are similar insofar as they relate to unpaid wages and Labor Code violations.

### 4. Adequacy of Class Representative and Class Counsel

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the Court address two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462. A court certifying a class must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B). Ultimately, when only one applicant seeks appointment as class counsel, the court must determine that "[c]lass counsel . . . fairly and adequately represent the interests of the class." *Id.* at 23(g)(4).

Here, while there is no obvious conflict between Thompson's interests and those of the class members, the Court has expressed its concern that Thompson may have favored his own interests at the expense of the class members in achieving the settlement. Similarly, the question of Counsel's adequacy has been an ongoing concern of the Court's. While Counsel has provided evidence of his firm's experience litigating overtime and rest/meal period cases, along with other wage and hour class cases, the Court has expressed its concerns regarding their "failure to recognize this action as a hybrid action raises question as to counsel's understanding of the procedural rules applicable to the FLSA claims it proposes that the class release without compensation." [Doc. No. 60 at 8:13-16.] Moreover, upon consideration of the revised settlement the Court noted that it did "little to satisfy the Court that class counsel have prosecuted the action vigorously on behalf of the class." [Doc. No. 68 at 7:21-23.] In the present motion, Counsel admits that they "did not key in on the cases to which the Court cited that indicate the need for a separate fund when

6

14-CV-02778-CAB-(WVG)

settling FLSA claims along with Rule 23 claims" but assert that they have addressed the Court's concerns "by creating two net settlement funds out of the gross settlement amount of $2,000,000 and reducing their attorney fee request from 33 1/3 % to 25%." [Doc. No. 70 at 23:5-11.]  But, the Court does not consider Counsel's reduction of their fee request in order to fund/finance/subsidize the separate collective action settlement fund as evidence of them putting the Collective Members' interests above their own or of them vigorously prosecuting the case vigorously on their behalf.

Notwithstanding the Court's concerns, no Class/Collective Member has filed an objection challenging the adequacy of the representative parties.  Accordingly, the Court finds this element satisfied for the purposes of certification of the settlement class.

### 5.  Predominance and Superiority

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022.  "Rule 23 (b)(3) permits a party to maintain a class action if . . . the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Conn. Ret. Plans & Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1173 (9th Cir. 2011), *aff'd*, 133 S. Ct. 1184 (2013) (citing Fed. R. Civ. P. 23(b)(3)).  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022-23 (quoting *Amchen Prods, Inc.*, 521 U.S. at 623).  It requires an examination into whether there are "legal or factual questions that qualify each class member's case as a genuine controversy." *Id.*  The superiority inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. *Id*. at 123.

Here, all of the class members were allegedly subject to Defendant's purported illegal labor policies.  The legal and factual questions common to each class member's claim predominate over any questions affecting individual class members.  The relatively

limited potential recovery for the class members as compared with the costs litigating the claims also support the conclusion that a class action is superior to other methods for adjudicating this controversy. Accordingly, the Court finds that the predominance and superiority inquiries have been satisfied.

In light of the foregoing, the Court conditionally certifies the Rule 23 class for the purposes of settlement. Additionally, because the FLSA class satisfies the Rule 23 class certification requirements, the Court finds it also satisfies the FLSA's less stringent requirement that the members be "similarly situated" for the purposed of the settlement. Accordingly, the Court conditionally certifies the FLSA collective for purposes of the settlement.

### B.  Legal Standard for Final Approval of Class Settlement

Federal Rule of Civil Procedure 23(3) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. The Rule also "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making this determination the Court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon,* 150 F.3d at 1027.

In assessing a settlement proposal the district court is required to balance a number of factors, namely:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of

8

counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon,* 150 F.3d at 1026.

Similar to Rule 23 class actions "[s]ettlement of an FLSA claim, including a collective class action claim, requires court approval." *Kempen v. Matheson Tri-Gas, Inc.,* No. 15-cv660-HSG, 2016 WL 407336,at *4 (N.D. Cal. Aug. 1, 2016); *see also Dunn v. Teachers Ins. & Annuity Assoc. of Am.*, No. 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) ("Most courts hold that an employee's overtime claim under FLSA is non-waivable, and therefore, cannot be settled without supervision of either the Secretary of Labor or a district court."). Generally, California district courts look to see if the settlements constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 29 U.S.C. § 216(b); *Lynn's Food Stores, Inc. v. U.S By and Through U.S. Dep't of Labor,* 679 F.2d 1350, 1355 (11th Cir. 1982); *see also Ambrosino v. Home Depot U.S.A., Inc.,* No. 11cv1319 L(MDD), 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11, 2014) ("A district court may approve an FLSA settlement if the proposed settlement reflects 'a reasonable compromise over [disputed] issues.'") (quoting *Lynn's Food Stores,* 679 F.2d at 1354).

Although ostensibly different from the standard governing approval of class actions under Federal Rule of Civil Procedure 23 "many courts begin with the well-established criteria for assessing whether a class action settlement is fair, reasonable and adequate under [Rule] 23(e) and reason by analogy to the FLSA context." *Millan v. Cascade Water Servs. Inc.,* No. 1:12-cv-1821-AWI-EPG, 2016 WL 3077710, at *3 (E.D. Cal. June 2, 2016) (internal quotation marks and citations omitted); *see also Otey v. Crowdflower, Inc.,* No 12-cv5524-JST, 2014 WL 1477630, at *11 (N.D. Cal. Apr. 15, 2014) ("[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a Rule 23 settlement.). Therefore, if the settlement here warrants approval under Rule 23(e), it will likely also warrant approval under the FLSA.

14-CV-02778-CAB-(WVG)

## C. Analysis

### 1. Adequacy of Notice

The Court approved notice of this class action and proposed settlement in the May 11, 2017, Preliminary Approval Order. The claims administrator distributed the Notice to 925 class/collective members. The Notice advised the Class/Collective of the terms of the Settlement, of their rights (1) to participate and to receive their share of the Settlement automatically, without submission of a claim form; (2) to object to the Settlement and to appear at the Final Approval Hearing, (3) to request exclusion from the Settlement; (4) the manner and timing for doing any of these acts; and (5) the date and time set for the final approval hearing. The Notice packet also included the class/collective member's individualized information such as hire date, termination date and number of shifts worked during the Class/Collective Period. Adequate periods of time were provided for each of these procedures. No class/collective members objected to the settlement or the adequacy of the Notice, and only one class/collective member requested exclusion from the class. Accordingly, the Court finds that the Class/Collective received adequate notice.

### 2. Strength of Plaintiff's Case; Risk of Further Litigation; and Risk of Maintaining Class Action Status

As a result of the preferable nature of Settlement over the uncertainties, expense and length of litigation "when assessing the strength of plaintiff's case, the court does not reach any ultimate conclusions regarding the contested issues of fact and the law that underlie the merits of this litigation." *Four in One Co. v. S.K. Foods, L.P.,* No. 2:08-CV-3017 KJM EFB, 2014 WL 4078238, at *7 (E.D. Cal. Aug. 14, 2014) (internal quotations omitted). Similarly, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, the Settlement has been reached after two and a half years of litigation. Plaintiff's claims at issue in the settlement involve disputed legal issues. The inherent risk of further litigation in this matter is known to all involved with the case. Proceeding with

this case presents the very real risk regarding class certification and an unfavorable decision on the merits.  While Plaintiff believes in the merits of his case, Defendant has strong defenses to class liability and damages determinations, and there is no guarantee that Plaintiff will prevail.  Furthermore, the risk of attaining class/collective certification on any of the claims is ongoing.  The Court finds these risks weigh in favor of settlement.

### 3.  The Amount Offered in Settlement

"Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] * * * is the need to compare the terms of the compromise with the likely rewards of litigation."  *In re TD Ameritrade Accountholder Litig.*, 226 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25, (1968)).  However, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, meant that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, after subtracting the deductions from the non-revisionary gross settlement amount of $2,000,000.00, the net settlement amount available to class/collective members is approximately $1,444,000.00.  Under the terms of the Settlement, the Rule 23 Class Fund will be allocated approximately $1,299,600.00 (or ninety (90) percent) and the FLSA Collective Action Fund will be allocated approximately $144,400.00 (or ten (10) percent) of the net settlement amount.  Under the Settlement each non-FLSA participating Class Member will receive[2], on average, $1,406.49 and each FLSA participating Collective

---

[2] Each participating Class member will receive a share of the Stipulated Class Net Settlement Fund that is equal to (i) the number of daily shifts worked by the Individual Participating Class Member during the Class Settlement Period, according to Costco's records, divided by the total number of daily shifts worked by all Participating Class Members during the Class Settlement Period, according to Costco's records, (ii) multiplied by the amount of the Stipulated Class Net Settlement Fund, (iii) minus the applicable state and federal employer/employee taxes to the portion of the payment that is devoted to wages.  The number of shifts allocated to each Participating Class Member will be increased by 15 if that Settlement Class Member terminated employment with Costco at any time between October 17, 2011 and October 4, 2016.

14-CV-02778-CAB-(WVG)

Member will receive[3], on average, $318.76.  In light of the risks associated with continuing this litigation, the Court finds that a payout in this amount appears reasonable and weighs in favor of approval of the settlement.

### 4.  Extent of Discovery

"A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution."  *Onitverso v. Zamoram*, 303 F.R.D. 356, 371 (E.D. Cal. 2014).  The court's assessment focuses on whether the "parties have sufficient information to make an informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting *Linney*, 151 F.3d at 1239).

Here, the Settlement has been after over two years of pending litigation and substantial discovery has occurred.  Counsel has litigated this action through discovery, multiple depositions, numerous meet and confers, and over sixty (60) interviews with class/collective members.  This history evidences the parties' knowledge regarding the relevant facts and strengths and weaknesses of their claims and defenses.  Consequently, the Court finds this factor weighs in favor of approval of the settlement.

### 5.  Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)).  Here,

---

[3] Each participating Collective member will receive a share of the Stipulated FLSA Collective Net Settlement Fund that is equal to (i) the number of daily shifts worked by the Individual Participating Collective Member during the FLSA Collective Settlement Period, according to Costco's records, divided by the total number of daily shifts worked by all Stipulated FLSA Collective Members during the FLSA Collective Settlement Period, according to Costco's records, (ii) multiplied by the amount of the Stipulated FLSA Collective Net Settlement Fund, (iii) minus the applicable state and federal employer/employee taxes to the portion of the payment that is devoted to wages.  If this calculation would not result in the entire Stipulated FLSA Collective Net Settlement Fund being paid out, then the remaining funds would go to augment the Stipulated Class Net Settlement Fund.

Counsel has provided a declaration detailing their experience in wage and hour class cases involving workers in the transportation industry.  Counsel declares that the settlement represents a compromise of the divergent positions of the Parties and provides substantial benefits to the Class and Collective.  He attests that Counsel after "considerable time, effort and skill  in evaluating the likelihood of getting the matter certified as a class and collective action and maintaining such status throughout the case, as well as the strength of Plaintiff's liability theory, the extent and range of class recovery against the risks of not obtaining and maintaining class certification status, and the risks posed through the normal perils of litigation, including the defenses asserted by Defendant, Defendant's proffered records, the difficulties of complex litigation, the lengthy process of establishing specific damages, and various possible delays and appeals that Plaintiff was able to agree to the proposed settlement reached at an arms-length mediation." [Doc. No. 71 at ¶ 24.]  In light of the foregoing, and according the appropriate weight to the judgment of Counsel, the Court finds this factor weighs in favor of the settlement.

### 6.   Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members."  *Nat'l Rural Telecomm. Coop., Inc.,* 221 F.R.D. at 529 (citations omitted).  Here, only one class/collective member has opted out of the class and no objections to the settlement have been received.  *Id.*  (the absence of a single objection "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.")  Accordingly, the Court finds this weighs in favor of settlement.

### 7.   Other Factors

In looking at the fairness of the Settlement the Court also considers two additional factors: the process by which the settlement was reached and the involvement of the named plaintiff in the process.  *See Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding factors "(9) the procedure by which the settlements were arrived at, see MANUAL FOR COMPLEX LITITGATION (FOURTH) § 21.6

(2004), and (10) the role taken by the plaintiff in that process.")  Here, the parties reached agreement after extensive arms-length negotiations, an all-day mediation before a neutral third party, and further non-collusive negotiations.  Counsel represent that Mr. Thompson, as class/collective representative, was actively involved in the case, including litigation and settlement.  Although Mr. Thompson did not personally attend the mediation he declares that he was available by telephone and was kept apprised of, and assisted in, all the negotiations.   Further, there is no evidence of preferential treatment for certain class/collective members, because final approval is not contingent upon the Court's determination as to a class/collective representative incentive awards.  Accordingly, the Court finds these factors weigh in favor of settlement.

### 8.   Balancing of the Factors

"Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Service Comm'n of City and Cnty. of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982) (citation omitted).  "[It must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation." *Id.*  Having considered the relevant factors, the Court finds they all weigh in favor of settlement of the Rule 23 class claim.  As a consequence, the Court finds the settlement fundamentally fair, adequate and reasonable.  Further, in consideration of the above factors the Court concludes that the settlement constitutes "a fair and reasonable solution of a bona fide dispute over FLSA provisions."  29 U.S.C. § 216(b); *Lynn's Food* 679 F.2d at 1355.  Therefore, the Court approves the settlement of the FLSA claim.

### III.   Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  That

14

Defendant agreed in the settlement not to oppose Counsel's request for $500,000 "does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.,* 327 F.3d 938, 964 (9th Cir. 2003).

In a diversity action under CAFA, federal courts apply state law when determining both the right to fees and the method of calculating them. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Pub. Utilities Comm'n,* 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating fees."). Following the California Supreme Court's decision, in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016), courts may either use the lodestar approach or "may determine the amount of reasonable fee by choosing an appropriate percentage of the fund created." *Laffitte,* 1 Cal. 5th at 503-06. In discerning an appropriate percentage award in a common fund case, the California Supreme Court suggested considering the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skills shown by counsel, and a lodestar cross-check. *Id.* at 495, 503-06. Although recognizing the Ninth Circuit's 25 percent benchmark in common fund cases, it did not adopt this touchstone.[4] *Id.*

Here, Counsel submits that awarding $500,000, or 25 percent of the common fund, is fair and reasonable in light of the benefit that has been conferred on the Class/Collective, the substantial hours and efforts expended, "resulting in a negative lodestar multiplier," the

---

[4] When employing their discretion and utilizing the percentage-of-recovery method, federal "courts typically calculate 25% of the [common settlement] fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942. In assessing the reasonableness of the award in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to be used, including "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g. cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

14-CV-02778-CAB-(WVG)

litigation risks and complexity of the case, the contingent nature of the fee, the experience of counsel, and the fees commonly awarded in cases of this type. Counsel argues that because the requested 25 percent award is less than the lodestar it is therefore reasonable.

The Court acknowledges that some factors support the fees request. For example, as the Court previously acknowledged, the settlement amount of $2,000,000 confers substantial benefits upon the Settlement Class/Collective, particularly in light of the risks associated with continuing this litigation to trial and weighs in favor of the fee amount. *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) (holding that "the most critical factor is the degree of success obtained"). Additionally, Counsel assumed the risk of taking this case on a contingency fee basis. *See Spann v. J.C. Penney Corp.,* 211 F. Supp. 3d 1244, 1264 (C.D. Cal. 2016) ("Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award.") (internal quotation marks and citation omitted). Furthermore, the experience of Counsel in litigating class actions of this type supports the request. Moreover, the reaction of the Class to the settlement has been positive, with only one member requesting exclusion, which supports the fee application.

However, while Counsel has litigated this case for over two years, the Court is mindful that it has questioned the pursuit of the FLSA claim on numerous occasions. Even now, it cannot be said that Counsel has achieved any measurable degree of success for the FLSA Collective, the amount being offered by Costco has remained a static $2,000,000. Rather, Counsel is reducing the fee request in order to fund the FLSA settlement pool. In essence, it is Counsel who is paying the fair and reasonable consideration for the release of the FLSA claims and not Costco. Counsel attempts to downplay the FLSA claims' by declaring the FLSA claims "do not increase the potential recovery; they add an additional, more difficult, mode of recovery for unpaid wage claims" are unsuccessful. Difficulty in proving the FLSA claim does not excuse Counsel's reticence in acknowledging this as a hybrid action and their willingness to release the FLSA claim without compensation. Further, the Court does not consider the legal issues involved in this case to be particular

16

novel or complex that would justify the award being sought. *See In re Heritage Bond Litig.* 2005 WL 1594403, at * 20 (C.D. Cal. June 10, 20105) ("the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award."). As a consequence, the Court finds consideration of Counsel's expended effort and skill to be a negative factor in deciding the requested fees.

In support of their fee request, Counsel has submitted a lodestar calculation. Counsel declares that they have worked 865.3 hours on the case, and that the calculated lodestar fee on these hours is $568,100.00. Counsel calculate the lodestar with the following hourly rates for attorneys from The Turley & Mara Law Firm, APLC: $650 for David Mara, $875 for William Turley, $450 for Jill Vecchi, $450 for Ray Paidlla, $450 for Jamie Serb, and $450 for Taylor Hanks.[5] In support, declarations and other evidence is offered to demonstrate the reasonableness of these rates compared to the prevailing market rates in the San Diego community for attorneys of their experience and ability. *See PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (a reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community). Moreover, Counsel assert that their fee is reasonable because they are requesting an amount that is less than the lodestar calculation and attest that they "did not calculate any hour worked – which were substantial – in the effort to address the Court's concerns at preliminary approval." [Doc. No. 70-1 at ¶ 33.]

Although the Court need not "closely scrutinize each claimed attorney-hour" when conducting the loadstar cross check some review is required. *Laffitte*, 1 Cal. 5th at 505. Here, the Court finds the $450 rate for the attorneys' who have been practicing for four years or less to be on the high end and not borne out by the comparable rates of the community. For example in the California Report submitted by Counsel the hourly rate of attorneys admitted to practice in 2010/2011 ranges from between $355 to $470. There is

---

[5] Mr. Turley was admitted to practice law in 1986, Mr. Mara on 2004, Mr. Padilla in 2012, Ms. Serb in 2013, Ms. Vecchi in 2014 and Mr. Hanks in 2014.

no evidence before the Court that would warrant remunerating Messrs. Padilla and Hanks, and Mses. Vecchi and Serb at the upper echelon of this rate.

The Court also takes issue with the 865.3 hours Counsel asserts they have worked on this case. As evidence of the reasonableness of the hours Counsel has submitted time records that are purportedly detailed. However, while the time records are voluminous, they provide very little information regarding the work performed, are entries which are ten words or less in length, and include entries for work subsequent to the Court's refusal to preliminarily approve the class settlement in February – some of which appear to be related to the FLSA Collective Claims. Without more evidence to support the number of hours worked or the rate of some of the attorney's, the Court finds the lodestar calculation unreliable and of little help in confirming if the submission is reliable.[6]

Furthermore, the Court is reluctant to reward Counsel for prolonging this litigation. The parties notified the Court they had entered into a settlement agreement on August 18, 2016, but it has taken almost a year for Counsel to win the Court's approval of the settlement [Doc. No. 51], in large part because of their decision to amend the complaint to add the FLSA claim and their subsequent willingness to settle the Collective Claims without compensation.

In light of the foregoing, the Court finds an award of 15 percent of the common fund more reasonable. *See Spann,* 211 F. Supp. 3d at 1263 ("As always, when determining attorneys' fees the district court [is] guided by the fundamental principles that fee awards out of common funds be reasonable under the circumstances.") (quoting *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at * 14 (N.D. Cal. 2007) *aff'd*, 331 Fed. Appx. 452 ( 9 th Cir. 2009)). Accordingly, the Court awards Counsel attorneys' fees in the amount of $300,000.

---

[6] Plaintiff never moved for class certification and no substantive motions were filed.

## IV.   Costs

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  Counsel has provided evidence that they have incurred $26,071.99 in costs over the course of this litigation.  The Court has reviewed the request and finds them to be reasonable.  Accordingly, the Court awards $26,071.99 in fees.

## V.   Class Representative Payments.

In the Settlement papers, Plaintiff asks for incentive awards of $5,000.  Although "incentive awards are fairly typical in class action cases," they are discretionary.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  "Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement."  *Staton*, 327 F.3d at 976 (internal ellipses, quotations, and citation omitted).  The purpose of incentive awards, therefore, is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958-59.  However, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

Nothing has convinced the undersigned that a $5,000 award is warranted, especially considering the limited success of this litigation as a whole and the average amount each class member will receive.  Considering the specific circumstances of this case and the relatively short period it has taken to litigate it, the Court finds awarding the class representative over three times more than what the average class member will receive excessive.  Accordingly, the Court reduces the discretionary incentive award to Mr. Thompson to $2,000.

14-CV-02778-CAB-(WVG)

## VI.    Payment to the California Labor and Workforce Development Agency

The parties have agreed that $7,500 from the settlement will be used for payment of civil penalties provided for in the Private Attorney General Act of 2004.  $7,500 will be paid to the California Labor & Workforce Development Agency.  The Court finds this reasonable and approves payment.

## VII.    Settlement Administration Cost

Finally, Counsel seeks payment of $21,000 to the Claims Administrator.  The Court has reviewed the declaration detailing the work performed by CPT Group, Inc., and finds that paying this amount in administrative costs reasonable.

## VIII.    Conclusion

In light of the foregoing, it is hereby **ORDERED** as follows:

1.  The Court **GRANTS** final approval of the proposed settlement;

2.  The Court **GRANTS IN PART** Plaintiff's motion for attorneys' fees, costs and class representative payments [Doc. No. 376];

3.  The Court **GRANTS** Class/Collective Counsel $300,000 in attorneys' fees and $26,071.99 in costs from the common fund;

4.  The Court **GRANTS** class/collective representative enhancement awards of $2,000 to Plaintiff Thompson to be paid from the common fund;

5.  The Court **GRANTS** $7,500 to be paid to the California Labor and Workforce Development Agency from the common fund as penalties;

6.  The Court **GRANTS** $21,000 in settlement administration costs to be paid from the common fund to CPT Group, Inc;

7.  The Class member who asked to opt out of the settlement is excluded from the class;

8.  The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law; and

14-CV-02778-CAB-(WVG)

9. Judgment is hereby entered on the terms set forth above.  The Clerk of the Court shall close this case.

It is **SO ORDERED**.

Dated:  September 1, 2017

_____

Hon. Cathy Ann Bencivengo
United States District Judge

14-CV-02778-CAB-(WVG)